H. EDWARD WOLFF AND LOUISE C. WOLFF, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

LOUISE C. WOLFF, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 6549, 6550. Promulgated September 11, 1946.

*Emanuel Wagner, Esq.*, for the petitioners.
*Francis X. Gallagher, Esq.*, for the respondent.

---

[3] Ways and Means Committee, H. Rept. 2333, 77th Cong., 1st sess., 1942—2 C. B. 372–409.

### OPINION.

Opper, *Judge*: Had petitioner paid to her stepmother the purchase price of the latter's life estate in a lump sum, the amount represented thereby would have constituted an investment in a capital asset, exhaustible and therefore recoverable through deduction over the life of the asset acquired, that is, the life expectancy of the stepmother. See *Caroline T. Kissel*, 15 B. T. A. 705; *Estate of F. S. Bell*, 46 B. T. A. 484; reversed, other grounds (C. C. A., 8th Cir.), 137 Fed. (2d) 454. But the peculiar facts here present lend an almost fantastic complication to this comparatively simple principle.

In the first place, the payments to the life tenant were not made in a single sum, but sporadically and from time to time over a period of years. In the second place, these same payments were the fruits of the property in which the purchased estate inhered and became available to petitioner currently by reason of the purchase. Hence, petitioner now inferentially concedes that they constitute income to her. See *Helvering* v. *Horst*, 311 U. S. 112; *Douglas* v. *Willcuts*, 296 U. S. 1; *Helvering* v. *Blumenthal*, 296 U. S. 552. But they correspondingly give rise to the present claim that equivalent deductions are necessary to eliminate distortion. See *Associated Patentees, Inc.*, 4 T. C. 979. In the third place, the years before us are subsequent to the end of both the life and life expectancy of the life tenant. But the fourth complication, petitioner's agreement to pay the life tenant an annuity as the purchase price, which would normally eliminate the need for consideration of any period after the annuitant's death, is offset by a fifth—petitioner's default in the stipulated annual payments when due and her consequent supplemental agreement covering the deferred payments, which, as made in the tax years in issue, all of which follow the life tenant's death, create the present controversy.

Some of these difficulties diminish upon further analysis. An agreed annuity payable in consideration of the transfer of an estate

for the annuitant's life would represent the consideration paid, and hence the basis. See *United States* v. *Ludey*, 274 U. S. 295; *D. Bruce Forrester*, 4 T. C. 907. It would also be coterminous with the period of exhaustion.[1] The installment of purchase price paid in any year and the deduction for depreciation would consequently be interchangeable. Both total cost and anticipated life would be estimates, but, being based upon the same assumed condition, the life tenant's life, any inaccuracy in the one would offset the other. Thus, in *Floyd M. Shoemaker*, 16 B. T. A. 1145, the amount of the annuity paid in the tax year was allowed as a deduction for exhaustion. So here, if the payments in question had been made as they came due under the original agreement, there would be no problem. See *D. Bruce Forrester, supra*. Petitioner's cost would already have been recovered by deduction of the amounts currently disbursed.

It is accordingly the factor of default which serves to make the present case troublesome. Petitioner was apparently on the cash basis, and we see no reason to assume that she would have been permitted to deduct in prior years any amount for the purchase price of the stepmother's life estate which was not actually paid in each year. Cf. *Eckert* v. *Burnet*, 283 U. S. 140; see *Elizabethtown Water Co. Consolidated*, 7 T. C. 406; *Detroit Edison Co.* v. *Commissioner*, 319 U. S. 98. Unless the payments due but remaining unpaid are allowed as deductions when made, the investment will hence not be recoverable at any time.

It was apparently on this theory that the closely analogous case of *Associated Patentees, Inc., supra*, was decided. It was there held, 4 T. C. 979, as outlined in the headnote:

Four individuals transferred to petitioner certain patents which they jointly owned in equal proportions under a contract obligating petitioner to pay them 80 percent of its income from licenses granted for their use. Under this contract petitioner paid them $42,209.76 in the taxable year and in its return deducted that amount as royalties paid. *Held:*

(1) This payment was a capital expenditure in acquisition of the patents.

(2) Petitioner is entitled to recover by depreciation its total cost of the patents over their lives and, since such cost is not determinable until the close of the term when all of the value of the patents passes and since the yearly payments are attributable to income of the year in which made, the "reasonable allowance" for depreciation provided by section 23 (l), I. R. C., requires the allowance of a deduction in each year equivalent to the payment made in that year. Such allowance will give petitioner over the term no more than its cost and no distortion of income will result.

---

[1] *Elmer J. Keitel*, 15 B. T. A. 903, is not to the contrary, for there the parties were not dealing at arm's length, as they obviously were here. It was accordingly impossible to say that the agreement represented solely cost—and therefore basis—of the property acquired. And without proof of the value of the property no allocation of cost could be made. Cf. *Anna L. Raymond*, 40 B. T. A. 244, 247; affd. (C. C. A., 7th Cir.), 114 Fed. (2d) 140; certiorari denied, 311 U. S. 710; *Floyd M. Shoemaker, infra.*

The opinion states (page 986) :

\* \* \* Respondent's regulations recognize the fact that there is no fixed rule, but that the cost should be apportioned over the useful life in such ratable amount as may reasonably be considered necessary to recover during the remaining useful life of the property the unrecovered cost or other basis. The situation here is unusual. But we think that the method for computing depreciation for which petitioner argues gives it a reasonable, and not more than a reasonable, allowance, whereas the method urged by respondent might deny petitioner the recovery of its cost and would unquestionably result in a distortion of income.

It is, of course, at once apparent that deductions for the exhaustion of a life estate, as such, seem at least questionable when we know the life tenant has already died. See *Citizens National Bank of Kirksville*, 42 B. T. A. 539; affd. (C. C. A., 8th Cir.), 122 Fed. (2d) 1011; certiorari denied, 315 U. S. 822. But what was a pure life estate when the original agreement took place has now been converted into something more complex. For the very reason that there had been defaults, petitioner undertook, by the supplemental agreement of 1937, to continue payments out of the avails of the property until all arrears had been made good. This was coupled with an extension of the adverse interest beyond the life of the stepmother, if necessary. It follows that both the period of payment and the exhaustion process must go on for some time into the future, even after the latter's death. While that period is necessarily indefinite, the payments and the estate will end together. We see no violation of the theory of the *Shoemaker* and *Associated Patentees* cases to assume here that the amount of each annual payment represents an adequate approximation of the corresponding exhaustion of the capital assets purchased thereby, and hence that, as in these cases, the periodic payments during the tax years in question are deductible "for exhaustion of the terminable estate acquired \* \* \*."

We may add that only the peculiar circumstances of the present situation lead us to that consequence, which may not necessarily follow on other facts. But for the reasons stated, we view respondent's action in this respect as unwarranted by the present record.

Reviewed by the Court.

*Decisions will be entered under Rule 50.*