ESTATE OF HOMER LAUGHLIN, DECEASED, BEACH D. LYON, ADMINISTRATOR WITH THE WILL ANNEXED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5891.   Promulgated January 16, 1947.

*Walter L. Nossaman, Esq.*, for the petitioner.
*E. A. Tonjes, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: This proceeding involves a deficiency in income tax for the calendar year 1942 in the amount of $8,647.89. The deficiency is due to several adjustments to the net income of the estate of Homer Laughlin as disclosed by its return for the year 1942. Petitioner, by appropriate assignments of error, contests two of these adjustments in the respective amounts of $1,200 and $9,600. These adjustments were explained by the respondent in a statement attached to the deficiency notice as follows:

(a) There is restored to gross income, or disallowed as a deduction therefrom, under the applicable provisions of the Internal Revenue Code, the exclusion or deduction of $1,200.00 shown in Schedule C of your return as "Less assignment of rent to Ella West".

\* \* \* \* \* \* \*

(d) The deduction of $9,600.00 claimed for payment to Ada Edwards Laughlin on account of "property settlement agreement with Homer Laughlin – $800.00 per month for life" is not allowable under the Internal Revenue Code.

There are, therefore, two issues in this proceeding, namely, (1) whether the amount of $1,200 paid to Ella West under the facts hereinafter set forth is excludible or deductible from the gross income of decedent's estate for the calendar year 1942; and (2) whether the amount of $9,600 provided for in an agreement entered into between decedent and his wife, Ada Edwards Laughlin, and incorporated in a decree of divorce, is deductible from the gross income of decedent's estate for the calendar year 1942.

All the facts are stipulated. The stipulation is incorporated herein by reference and adopted as our findings of fact. Such facts as are deemed necessary to an understanding of the issues decided are summarized below:

*Issue 1.*—Petitioner is the administrator c. t. a. of the estate of Homer Lauglin, who died on December 27, 1932, a resident of Los Angeles, California. The estate is still in the process of administration. The income tax return of the estate for the taxable period involved was filed with the collector for the sixth district of California on or before March 15, 1943. Homer Laughlin, Sr., father of Homer Laughlin, died on or about January 10, 1913, leaving a last will and

testament dated August 30, 1909, duly admitted to probate on January 29, 1913, in the Superior Court of the State of California in and for the County of Los Angeles, which will contained, among other provisions, the following:

SECOND: I give, devise and bequeath unto my nieces, Ella West and Nancy McIntosh, each the sum of One hundred dollars ($100) per month, payable quarterly to each of them during their natural life.

After certain other legacies, bequests, and devises, the will gave the residue of the estate equally to decedent's son and daughter, Homer Laughlin and Guendolyn (or Guendolen) Virginia Laughlin. On August 1, 1921, Homer Laughlin and Ella West entered into a written agreement providing in part as follows:

I, Ella West, in consideration of Five Hundred Dollars ($500.00) in hand paid to me, and in further consideration of an assignment of One Hundred Dollars ($100.00) per month of the rent to be paid by the lessee of the ground floor of the Laughlin Building, and in further consideration of the assumption of Homer Laughlin, Jr. to pay me the said sum of One Hundred Dollars ($100.00) per month during the remainder of my natural life, do hereby release the said Homer Laughlin, Jr., as Trustee, Guendolen V. Laughlin, and all of the property comprising the estate of Homer Laughlin, deceased, late of Los Angeles, California, from the payment of the annuity provided for in the will and decree of distribution in the estate of said Homer Laughlin, hereby releasing absolutely any claim of every character either against said persons or the property of said estate, the said lessee having recognized the said assignment and having agreed to pay to me the said sum monthly of the rent due and payable to the said Laughlin for the said ground floor of said building.

The purpose of this agreement was to obtain her consent to the distribution of the estate, which was made thereafter in due course, pursuant to the court decree.

The above mentioned Laughlin Building is located at No. 315 South Broadway, Los Angeles, California. From about August 1, 1921, it was the property of Homer Laughlin. He acquired a one-half interest in the building as a devisee under his father's will and purchased the other half from his sister, Guendolyn, the funds for such purpose being obtained by the mortgage on such building to the Metropolitan Life Insurance Co. The Laughlin Building is a part of Homer Laughlin's estate, which has been in process of administration in the Superior Court of the State of California in and for the County of Los Angeles since about February 4, 1933, on which date the will was duly admitted to probate. In May 1933, a dispute having arisen between Ella West and the estate of Homer Laughlin as to her rights under the agreement of August 1, 1921, a suit for declaratory relief was brought in the Superior Court of the State of California in and for the County of Los Angeles. On June 28, 1933, the court rendered its judgment against Beach D. Lyon and Beach D. Lyon, as admin-

istrator c. t. a. of the estate of Homer Laughlin, deceased, which judgment provided in part as follows:

* * * on the 1st day of August, 1921, Homer Laughlin assigned to the plaintiff Ella West One Hundred ($100) Dollars of the monthly rental due or to become due from the lessee of the ground floor of the Laughlin Building, which sum was to be paid to the plaintiff Ella West each month during the remainder of her natural life; that from and after said 1st day of August, 1921, Homer Laughlin had no right, title, or interest in and to said sum of One Hundred ($100) Dollars so assigned to this plaintiff; that the defendants Beach D. Lyon, and Beach D. Lyon as Administrator with the Will annexed of the estate of Homer Laughlin, have no right, title, or interest in and to the said sum of One Hundred ($100) Dollars of the monthly rental due or to become due from the lessee of the ground floor of the Laughlin Building * * *

On July 7, 1933, the court made a further judgment in this suit, determining the issues between plaintiff and the remaining defendants and reciting in part as follows:

It Is Ordered, Adjudged and Decreed that on the 1st day of August, 1921, Homer Laughlin for valuable consideration assigned to the plaintiff herein, Ella West, for the remainder of her natural life, the sum of $100.00 per month, said sum to be paid from the rent due from the tenant in possession of the ground floor of the Laughlin Building;

And It Is Further Ordered, Adjudged and Decreed that defendant Grand Central Public Market, Inc., be and it is hereby ordered and authorized to pay to this plaintiff the sum of $100.00 per month during the natural life of said plaintiff so long as said Grand Central Public Market, Inc., remains in possession of the ground floor of the Laughlin Building, or so long as it is obligated on any lease of the ground floor of the Laughlin Building.

And It Is Further Ordered, Adjudged and Decreed that the defendant Citizens National Trust and Savings Bank of Los Angeles, a national banking association, as Trustee, and the defendant Grand Central Public Market, Inc., a corporation, have no right, title or interest in or to said sum of $100.00 per month so assigned by Homer Laughlin to Ella West.

The lessee of the ground floor of the Laughlin Building was the Grand Central Public Market, Inc. The lease terminated on October 31, 1939, and petitioner leased the ground floor of the building to other tenants, negotiating and executing these leases. Ella West was not consulted, nor did she in any manner participate therein.

During the taxable year 1942 petitioner paid to Ella West the sum of $1,200, pursuant to the agreement of August 1, 1921, between Homer Laughlin and Ella West and the Superior Court judgment of June 28, 1933. This sum was paid out of rentals received by petitioner from the ground floor of the Laughlin Building during that year. The gross and net rentals received by petitioner from that source for and during the taxable year 1942 were greatly in excess of the sum of $1,200.

In the Federal estate tax return filed by the estate of Homer Laughlin there was claimed under schedule entitled "Debts of Decedent"

the following item: "Ella West ($100 per mo. Expectancy 11 years. $16,610.00." In the final determination of decedent's estate tax liability the Ella West claim was allowed as a deduction in the total amount of $9,194.05, such amount being the present value at the date of decedent's death of an annuity of $100 per month payable during the expected life of Ella West, who was then 66 years of age.

The first issue we have to decide is whether the $1,200 paid to Ella West during the year 1942 is either excludible or deductible from the gross income of the decedent's estate. Petitioner contends that the sums paid to Ella West were paid pursuant to an assignment or transfer of a corresponding interest by the decedent, Homer Laughlin, in the real property designated as the ground floor of the Laughlin Building; that to the extent mentioned Ella West had an interest in that property and that as to the sums received and paid over to her the estate acted as a mere conduit; that for these reasons the $1,200 paid to Ella West is excludible from the gross income of the estate for 1942. In the alternative, petitioner claims that the payments in question were required to be made and were made out of the income of the estate; that the $1,200 represented income which was distributable and was actually distributed during the taxable year to Ella West as a legatee, heir, or beneficiary and is deductible under the provisions of section 162 (b) of the Internal Revenue Code.

Respondent contends that the sum of $1,200 paid by petitioner to Ella West during the year 1942 was for the satisfaction of a debt of Homer Laughlin, incurred during his lifetime in a capital transaction, and is not a distribution of income within the meaning of section 162 (b). He further argues that, in the Federal estate tax return filed by the estate of Homer Laughlin, there was claimed as debts of the decedent the following item: "Ella West ($100 per mo. Expectancy 11 years. $16,610.00"; that in the final determination of decedent's estate tax liability the Ella West claim was allowed as a deduction in the amount of $9,194.05, such amount being the present value at the date of the decedent's death of an annuity of $100 per month payable during the expected life of Ella West, who was then 66 years of age. He maintains that, decedent's estate having had the benefit of a deduction of $9,194.05 as above set out, there has been a recognition that the sum represented a debt of the decedent, and it is, therefore, not deductible from the gross income of the estate.

In deciding the issue which we have here to decide, it is not necessary for us to say whether the respondent acted properly in allowing to the estate of decedent for estate tax purposes a deduction of the commuted value of the annuity payments due to Ella West, based on her life expectancy at the time of decedent's death. We do not have the

estate tax case before us, and, therefore, have nothing to decide with respect to it.

What we do have to decide is the legal effect of the agreement which Homer Laughlin made with Ella West on August 1, 1921. It is necessary to examine that document and the circumstances attending its execution to determine its force and effect. In the last will and testament of the father of Homer Laughlin, he bequeathed to Ella West an annuity of $100 a month for life. This annuity was payable in all events, whether the estate had income or not. It requires no citation of authorities to support the proposition that it was a charge against all the property in Homer Laughlin, Sr.'s residuary estate. Homer Laughlin, Jr., and his sister were the equal beneficiaries of this residuary estate. One of the valuable assets of the residuary estate was the Laughlin Building, situated in Los Angeles. Homer purchased his sister's one-half interest in this building and in order to secure the release of Ella West from her claim against the estate of Homer Laughlin, Sr., for the payment of a life annuity of $100 a month, Homer Jr., assigned to her irrevocably $100 a month for life out of the rents from the ground floor of the Laughlin Building. This, it seems to us, was more than a mere assignment of future income as that term is commonly understood, but was an assignment of a property interest to Ella West in the rentals from the ground floor of the Laughlin Building. This is the effect of the judgment of the Superior Court of California in and for the County of Los Angeles in Cause No. 356,776, in which Ella West was plaintiff and Beach D. Lyon, individually, and Beach D. Lyon, as administrator, was defendant. The judgment in that cause has been set out above. It seems to us there can be no question but that the Superior Court has correctly interpreted the terms of the agreement between Ella and Homer. We shall so regard it in deciding issue 1.

Petitioner relies chiefly on *Blair* v. *Commissioner*, 300 U. S. 5. In that case the life beneficiary of a testamentary trust assigned to his children "an interest amounting to $6,000 for the remainder of that calendar year, and to $9,000 in each calendar year thereafter, in the net income which the petitioner was then or might thereafter be entitled to receive during his life." The Court held that, where the life beneficiary of a trust assigned a share of the income to another for life without retaining any form of control over the interest assigned, the assignment was a transfer *in præsenti* to the donee of a life interest in the corpus of the trust property and the income paid to the donee was taxable to him and not the donor. We think the *Blair* case is applicable and controlling here. In the *Blair* case, the Court, in speaking of the nature and effect of the irrevocable assignment which had been made, said:

* * * The assignment of the beneficial interest is not the assignment of a chose in action but of the "right, title, and estate in and to property." [Citing authorities.]

We conclude that the assignments were valid, that the assignees thereby became the owners of the specified beneficial interests in the income, and that as to these interests they and not the petitioner were taxable for the tax years in question. * * *

In the instant case Homer Laughlin was not only the beneficial owner of the Laughlin Building, he was the actual owner in fee simple of the building and unquestionably had the right to convey the interest which he did convey to Ella West. Therefore, in view of what the Supreme Court said in the *Blair* case, we hold that the $1,200 in question should be excluded from the income of petitioner. It did not belong to him—it was the property of Ella West. See *Herbert R. Graf*, 45 B. T. A. 386, which we also think is an applicable authority which supports our decision here.

Having held that such amount is to be excluded from petitioner's income, it becomes unnecessary to pass upon petitioner's alternative contention that, if the estate is not entitled to have such amount excluded from gross income, it is entitled to have such payment allowed as a deduction in computing net income.

We think the facts of the instant case distinguish it from such cases as *Corbett Investment Co.* v. *Helvering*, 75 Fed. (2d) 525, affirming memorandum opinion of the Board. The *Corbett* case was a case where a decedent bequeathed to his widow an annual sum payable monthly from income of realty devised to grandsons, and the widow released the realty from this obligation and accepted the *personal* undertaking of the grandsons to continue the payment of the annuity and subsequently the grandsons conveyed the realty to a corporation, which assumed liability for the monthly payments. On these facts the court held that the transactions between the widow and grandsons and between the grandsons and the corporation were in the nature of a purchase and that the annual payments made to the widow were capital expenditures and not deductible by the corporation, even though the payments were taxable to the widow. In thus holding the court said:

* * * In this case, from the time of the transfer of the real estate to petitioner from the grandsons, petitioner received all the rents in its own right and so far as we are told by anything in the record, it had the right and the power to use them without accountability to the widow or any one else, and the widow's *only* right was to demand and receive from petitioner a thousand dollars monthly, *regardless of the source from which it came.* The payments to her, therefore, were clearly taxable to petitioner, even though they were also taxable to her. * * * [Italics supplied.]

As we have already pointed out, in the agreement of August 1, 1921, between Homer and Ella, Homer definitely assigned to her $100 of the rent from the Laughlin Building for the remainder of her natural life. It was under these facts that the Superior Court of Los Angeles held that Ella was the owner of this income right to receive $100 a month from the rent from the Laughlin Building and that:

* * * Homer Laughlin had no right, title, or interest in and to said sum of one Hundred ($100) Dollars so assigned to this plaintiff; that the defendants Beach D. Lyon, and Beach D. Lyon as Administrator with the Will annexed of the estate of Homer Laughlin, have no right, title or interest in and to the said sum of one Hundred ($100) Dollars of the monthly rental due or to become due from the lessee of the ground floor of the Laughlin Building * * *.

It is because of the foregoing facts that we think the instant case is distinguishable from *Corbett Investment Co.* v. *Helvering, supra,* and other cases of that kind which have followed it.

*Issue 2.*—On or about April 1, 1924, Homer Laughlin and his then wife, Ada Edwards Laughlin, entered into a property and support and maintenance settlement agreement, which was approved and affirmed in an interlocutory decree of divorce dated September 24, 1924, in the Superior Court of the State of California in and for the County of Los Angeles and in a final decree dated September 29, 1925, pursuant thereto. The agreement provided that Homer Laughlin pay his wife a life income of $800 per month, provided, however, that, if the parties should be divorced and his wife should remarry, these payments should be reduced to $300 monthly. It also provided that, in order to secure the faithful performance of the terms and conditions of this agreement, it was agreed that the Homer Laughlin Building should be hypothecated as security for the faithful performance of the terms and conditions of the agreement. The agreement provided in part as follows:

9. In order to secure the faithful performance of the terms and conditions of this agreement, the party of the first part covenants and agrees that that certain real estate, together with the improvements thereon, known as the "Homer Laughlin Building", located between Third and Fourth Streets, on the west side of Broadway, in the city of Los Angeles, state of California, shall be and is hereby hypothecated as security for the faithful performance of all of the terms and conditions of this agreement, and especially for the payment of the said monthly installments of $800 each * * *

It was also agreed that, if the Homer Laughlin Building should be sold, Homer Laughlin should deposit with a trust company the sum of $150,000, which trust fund should stand as security for the faithful performance of all the terms and conditions of this agreement in lieu of the Homer Laughlin Building. It was further agreed that if Homer Laughlin should at any time create a trust fund of $150,000

or furnish the wife an insurance policy guaranteeing the performance of the terms of this agreement by Homer Laughlin, the wife agreed to release the Homer Laughlin Building from the lien or obligation of the contract. It was provided that these payments should survive the death of Homer Laughlin and be binding upon his estate.

The final judgment of divorce, made and entered September 29, 1925, decreed in part that:

* * * the property settlement agreement, referred to in the interlocutory decree in this action and by reference made a part thereof, is hereby ratified, approved and confirmed, and the property of the parties hereto is hereby assigned in accordance with the terms of said agreement and the other rights and obligations of the parties hereto are assigned, determined and adjudged in accordance with the terms of said agreement, which agreement is hereby made a part of this judgment and is in words and figures as follows, to wit: * * *

During his lifetime Homer Laughlin paid to Ada Edwards Laughlin $800 per month, as provided in the settlement agreement. Ada Edwards Laughlin is living at the date hereof and has never remarried. The Homer Laughlin Building was not sold by Homer Laughlin, nor by his estate. The trust fund above referred to has never been established, nor has the insurance policy been furnished guaranteeing Homer Laughlin's performance of the terms of the settlement agreement.

During the taxable year 1942 petitioner paid to Ada Edwards Laughlin the sum of $9,600, pursuant to the April 1, 1924, agreement and the court decrees in the divorce action.

In schedule 1, "Debts of Decedent," of the Federal estate tax return of the estate of Homer Laughlin, the following item was claimed as a deduction:

Indebtedness in favor of Ada Edwards Laughlin, in pursuance of Property Settlement Agreement, dated April 1, 1924, approved by Decree of Superior Court of the State of California, in and for the County of Los Angeles, and secured as a lien on the building, subject to Trust Deed in favor of Metropolitan Life Insurance Co. (To return $9600.00)
Expectancy 16 years_____ $152,480.00.

In the first audit of the return this item was reduced by the Commissioner to $101,259.35, but was later eliminated by the Commissioner in the manner hereinafter set forth. On October 22, 1938, petitioner filed a claim for refund in the amount of $2,500 on account of certain omitted expense items such as attorney fees and miscellaneous administrative expenses. These expenses were later adjusted and determined and an adjustment was made for additional debts owing by the decedent, but the claim for refund was rejected for the reason that the above amount of $101,259.35, representing decedent's liability on the separation agreement of April 1, 1924, had been erroneously in-

cluded as a deduction in the prior determination of the estate tax liability. The Commissioner's letter dated October 25, 1939, stated that this amount was not a proper deduction under section 812(b) of the Internal Revenue Code. Petitioner has taken no action with regard to said claim and the same is now barred by the statute of limitations.

The gist of petitioner's argument that decedent's estate is entitled to a deduction of the $9,600 paid to Ada Edwards Laughlin is that it is clear that if Homer Laughlin were living he would be entitled to the benefit of section 23 (u) of the Internal Revenue Code.[1] Petitioner further argues that the payment of the $9,600 in question is taxable to Ada E. Laughlin under the provisions of section 22 (k).[2] Homer Laughlin, the husband, is now dead and his estate is in process of administration and therefore section 23(u) is not applicable.

Is the estate of Homer Laughlin entitled to the deduction of the $9,600 the same as Homer would be entitled were he still living? Respondent contends the question should be answered no. He argues that, inasmuch as the recent decisions allow as a deduction from a deceased husband's estate the commuted value of the claim for monthly payments to a wife for life under a decree of divorce for estate tax purposes, cf. *Estate of Pompeo M. Maresi*, 6 T. C. 583; affd., 156 Fed. (2d) 929, such payments should not be allowed the estate as a deduction for income tax purposes. Respondent contends that if this Court should allow the petitioner's claim in this case it would be contrary to Regulations 111, section 29.162–1, printed in the margin.[3]

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:

(u) ALIMONY, ETC., PAYMENTS.—In the case of a husband described in section 22 (k), amounts includible under section 22 (k) in the gross income of his wife, payment of which is made within the husband's taxable year. If the amount of any such payment is, under section 22 (k), or section 171, stated to be not includible in such husband's gross income, no deduction shall be allowed with respect to such payment under this subsection.

[2] SEC. 22. GROSS INCOME.

(k) ALIMONY, ETC., INCOME.—In the case of a wife who is divorced or legally separated from her husband under a decree of divorce or of separate maintenance, periodic payments (whether or not made at regular intervals) received subsequent to such decree in discharge of, or attributable to property transferred (in trust or otherwise) in discharge of, a legal obligation which, because of the marital or family relationship, is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce or separation shall be includible in the gross income of such wife, and such amounts received as are attributable to property so transferred shall not be includible in the gross income of such husband. * * *

[3] SEC. 29.162–1. INCOME OF ESTATES AND TRUSTS.—In ascertaining the tax liability of the estate of a deceased person or of a trust, there are deductible from the gross income, subject to exceptions, the same deductions which are allowed to individual taxpayers. See generally section 23, and the provisions thereof governing the right of deduction for depreciation and depletion in the case of property held in trust. Amounts allowable under section 812 (b) as a deduction in computing the net estate of a decedent are not allowed as a deduction under section 23, except subsection (w), in computing the net income of

He says that under the *Maresi* case the commuted value of the future payments to Homer Laughlin's divorced wife was deductible as an indebtedness of the estate. "Ordinarily" continues respondent, "the payment of a debt of a decedent does not furnish a foundation for an income tax deduction." At this point it may be remarked that although the estate of Homer Laughlin claimed as a deduction on the estate tax return the commuted value of the payments to be made to Ada Edwards Laughlin based on her life expectancy of 16 years, $152,480, the Commissioner disallowed such deduction. The stipulated facts with reference to the course of that claimed deduction are given above. Petitioner does not claim, however, that the Commissioner is estopped from making his present contention because of any disallowance which he may have made of the claimed deduction for estate tax purposes. It seems plain there is no estoppel. Petitioner concedes that ordinarily the payment of a debt of a decedent by his estate does not furnish a foundation for an income tax deduction. Petitioner claims, however, that the estate of Homer Laughlin is entitled to deduct the $9,600 in question because of certain definite statutory provisions to which we shall presently refer. Petitioner's argument on this phase of the issue is somewhat involved, but we think we state it with substantial accuracy as follows:

Section 162 of the code is applicable to the estates of decedents. Section 162 (b) provides that there shall be allowed as a deduction in computing the net income of the estate the amount of the income for the taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries, whether distributed to them or not. Section 171(b) of the code [4] provides that "for the purposes of computing the net income of the estate or trust and the net income of the wife described in section 22 (k) or subsection (a) of this section, such wife shall be considered as the beneficiary specified in this supple-

the estate unless there is filed in duplicate with the return in which the item is claimed as a deduction a statement to the effect that the items have not been claimed or allowed as deductions from the gross estate of the decedent under section 812 (b) and a waiver of any and all right to have such item allowed at any time as a deduction under section 812 (b). For items not deductible, see section 24. Against the net income of the estate or trust there are allowable certain credits, for which see sections 25 and 163.

[4] SEC. 171. INCOME OF AN ESTATE OR TRUST IN CASE OF DIVORCE, ETC. [Added by sec. 120, 1942 Act.]

* * * * * * *

(b) WIFE CONSIDERED A BENEFICIARY.—For the purposes of computing the net income of the estate or trust and the net income of the wife described in section 22 (k) or subsection (a) of this section, such wife shall be considered as the beneficiary specified in this supplement. A periodic payment under section 22 (k) to any part of which the provisions of this supplement are applicable shall be included in the gross income of the beneficiary in the taxable year in which under this supplement such part is required to be included.

ment." Under section 22 (k) a "wife" is an ex-wife "divorced * * * from her husband" where she is receiving periodic payments "in discharge of * * * a legal obligation which * * * is imposed upon or incurred by such husband under such decree or under a written instrument incident to such divorce * * *." Ada Edwards Laughlin is therefore a "wife" as described in section 22 (k). Being such a wife, she is the "beneficiary" specified in section 171 (b), and, as such, the periodic payments to her are includible in her income, and these payments are deductible by the estate under section 162 (b). Such is petitioner's argument.

Although respondent does not argue the meaning of section 171 (b) in his brief, the Treasury regulations are apparently in conflict with what the petitioner contends. Regulations 111, section 29.23(u)–1 provides in part:

> The deduction under section 23 (u) is allowed only to the obligor spouse. It is not allowed to an estate, trust, corporation, or any other person who may pay the alimony obligation of such obligor spouse. * * *

The legislative history of section 171 (b) does not disclose that it was enacted to accomplish the purpose claimed by petitioner. In the Senate Finance Committee report which accompanied the Revenue Bill of 1942 it is said, among other things, with reference to section 171, included in that bill:

> * * * For the purpose of clarity, this section provides that the wife entitled to receive the payment is considered as the beneficiary of the trust. If these provisions of section 171 (b) apply to any part of a periodic payment required under section 22 (k) to be included in income of the beneficiary, the whole of such periodic payment shall be included in gross income of the beneficiary in the taxable year in which under the above provisions of section 171 (b) such part is required to be included in her income. It is contemplated under these provisions that the trust or estate will be entitled to a deduction in computing its net income for amounts required to be included in the wife's income under section 22 (k) or section 171 *to the extent that such amounts are paid, credited, or to be distributed out of income of the estate or trust for its taxable year.* [Emphasis supplied.]

By a reference to the facts which we have given under this issue, it will be seen that the $800 monthly which Homer Laughlin was to pay his divorced wife for her support and maintenance was to be paid in all events. If he had sufficient income with which to pay it, well and good. If, on the contrary, in any particular year he had no net income, the $800 per month nevertheless had to be paid. Under these circumstances, when Homer Laughlin died and his estate had to continue to make the payments, we do not think that it can be said that his divorced wife, Ada, was an income beneficiary of his estate to whom $800 per month was currently distributable, under section 162 (b).

We think a reading of section 162 (b) will disclose that petitioner's construction of the meaning of 171 (b) is not correct. Section 162 (b), as amended by the Revenue Act of 1942, reads as follows:

(b) There shall be allowed as an additional deduction in computing the net income of the estate or trust the amount of the income of the estate or trust for its taxable year which is to be distributed currently by the fiduciary to the legatees, heirs, or beneficiaries, but the amount so allowed as a deduction shall be included in computing the net income of the legatees, heirs, or beneficiaries whether distributed to them or not. As used in this subsection "income which is to be distributed currently" includes income for the taxable year of the estate or trust which, within the taxable year, becomes payable to the legatee, heir, or beneficiary. Any amount allowed as a deduction under this paragraph shall not be allowed as a deduction under subsection (c) of this section in the same or any succeeding taxable year.

As we have already indicated, if decedent's divorced wife, Ada, had been one to whom income was currently distributable by the estate, then it is reasonable to believe that she would be a "beneficiary" of the estate as provided by section 171 (b), upon which petitioner relies. However, there was no condition in the divorce settlement that the $9,600 annually was to be paid to her out of income. Therefore, it seems to us that section 171 (b) is not applicable to a situation such as we have here. When decedent died his estate was entitled to deduct, for estate tax purposes, as *indebtedness* owing to Ada Edwards Laughlin, the commuted value of the payments to be made to her for life. Cf. *Pompeo M. Maresi, supra.* Petitioner, the estate of Homer Laughlin, deceased, is not entitled by virtue of section 171 (b) of the code, carried in the Revenue Act of 1942, to deduct from its net income the $9,600 paid in the taxable year to Ada Edwards Laughlin. On this issue the respondent is sustained.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

DISNEY, *J.*, concurs only in the result.

———

OPPER, *J.*, concurring: The conclusion reached here seems to me entirely sound, but I am doubtful whether the first point is properly founded on *Blair* v. *Commissioner*, 300 U. S. 5. The scope of that opinion has been radically narrowed by *Harrison* v. *Schaffner*, 312 U. S. 579. Those two cases, as well as such decisions as *Helvering* v. *Horst*, 311 U. S. 112, deal with the vexatious and intricate question of the validity for tax purposes of anticipatory and gratuitous transfers of future income. If decedent's assignment of the prospective rents without a conveyance of the property which produced them had been a gift, I think we should have had to deal with the question left open

in *Harrison* v. *Schaffner*, since decedent concededly failed to part with the income for the full term of his estate, as in the *Blair* case. In the *Schaffner* case the Supreme Court said:

* * * Even though the gift of income be in form accomplished by the temporary disposition of the donor's property which produces the income, the donor retaining every other substantial interest in it, we have not allowed the form to obscure the reality. * * *

And, as we pointed out in *Herbert R. Graf*, 45 B. T. A. 386:

* * * The Court said in the last paragraph of the *Schaffner* opinion that future decisions will have to determine precisely where the line shall be drawn between gifts of income-producing property and gifts of income from property of which the donor remains the owner * * *

When, however, we come to deal with transfers for a valuable consideration as in this case and in *Herbert R. Graf*, *supra*, a different situation arises. It is then "unnecessary to determine just exactly how many incidents of ownership * * * were acquired * * * since the taxing acts are not so much concerned with the refinements of title as with the actual command over the income which is taxed and the actual benefit for which the tax is paid." *Herbert R. Graf*, *supra*.

A more satisfactory ground for the decision in the present proceeding would seem to me, by viewing the transaction as a whole, to recognize that the decedent had acquired a wasting asset for which he and his estate were entitled to take deductions for depreciation. In such a situation the payments received and the deductions allowed, being both for the life of the annuitant, would offset each other. *H. Edward Wolff*, 7 T. C. 717. And even though the petitioner estate happens to have been permitted a deduction based upon the annuitant's claim, any basis thereby acquired for the estate is shown here to have been exhausted. The facts show that the amount allowed as a deduction for the annuitant's claim was $9,194.05. Making the reasonable assumption that the estate has paid the required $1,200 each year for the nine years following decedent's death, the total paid to the end of the year 1941 was $10,800. Any benefit conferred upon the estate by the permitted deduction had thus been used up before the beginning of the present tax year, with the consequence that the process of exhaustion is continuing beyond the period for which any claim has been allowed. If the proposed deficiency were disapproved on that ground, the depreciation being exactly equal to the proposed addition to income, *H. Edward Wolff*, *supra*, there would have been no necessity for mentioning the complicated question lurking in the Court's disposition of the first issue.

MURDOCK and KERN, *JJ.*, agree with the above.