431 F.2d 664
 70-2 USTC P 9606
 MANUFACTURERS HANOVER TRUST CO., Robert P. Payne and Charles
C. Parlin, as trustees U/I 6/4/32 by Anne D.
Dillon, as Grantor, Appellees,
v.
COMMISSIONER OF INTERNAL REVENUE, Appellant.
 No. 810, Docket 34105.
 United States Court of Appeals, Second Circuit.
 Argued May 27, 1970.
Decided Sept. 14, 1970.
 
 Charles C. Parlin, James R. Rowen, James S. Little, Shearman & Sterling, New York City, for appellees.
 Johnnie M. Walters, Asst. Atty. Gen., Lee A. Jackson, Elmer J. Kelsey, Robert I. Waxman, Attys., Dept. of Justice, Washington, D.C., for appellant.
 Before WATERMAN, FRIENDLY and HAYS, Circuit Judges.
 WATERMAN, Circuit Judge:
 
 
 1
 The sole issue presented by this petition to review a decision of the Tax Court in favor of taxpayer, a trust, is whether a deduction claimed for the portion of the amortized cost of a purchased life estate which is allocable to income received from tax exempt interest is disallowed by 265(1) of the Internal Revenue Code.
 
 
 2
 The basic facts may be briefly summarized. In 1958, Clarence Dillon assigned 72% Of his life estate and contingent remainder in a Trust created by him in May 1932 to another trust created in June 1932 by his daughter, Anne Dillon. In consideration for this transfer, the taxpayer, the June 1932 trust, paid Clarence Dillon $1,232,030.18. In November 1961 taxpayer began amortizing this amount, using a straight line method, over a projected period of 6.21 years, then Clarence Dillon's life expectancy. During 1962, taxpayer received $526,373.05 as its share of income from the May 1932 trust. Of this amount, $58,291.79 of interest, eleven per cent of the total income, was wholly exempt from income taxes, having been derived from tax exempt sources. The remainder of the income was reported by taxpayer as dividends and as long-term capital gains. At the same time, taxpayer took the previously described amortization deduction in the amount of $198,394.55. The Commissioner determined that of the amount taken as an amortization deduction the sum of $21,970.06, or 11% Of the total taken, was not allowable as a deduction because it was allocable to the tax-exempt income of $58,291.79, which was 11% Of the total income of $526,373.05 the taxpayer, the June 1932 trust, derived from the May 1932 trust. On the basis of this conclusion the Commissioner determined a deficiency in the income tax of taxpayer in the amount of $19,057.44. The Commissioner's assertion of a deficiency, which taxpayer challenged by its Tax Court petition for a redetermination, was based upon the portion of Section 265 of the Internal Revenue Code which reads:
 
 
 3
 265. Expenses and interest relating to tax-exempt income.
 
 
 4
 No deduction shall be allowed for--
 
 
 5
 (1) Expenses.
 
 
 6
 Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this subtitle, or any amount otherwise allowable under section 212 (relating to expenses for production of income) which is allocable to interest (whether or not any amount of such interest is received or accrued) wholly exempt from the taxes imposed by this subtitle.
 
 
 7
 The Commissioner concedes that if the amortization claimed by taxpayer for the cost of its life estate is not 'any amount otherwise allowable under section 212,' Section 265(1) is not effective to disallow the deduction of the portion of the amortization allocable to the tax-exempt income received by taxpayer.
 
 Section 212 provides:
 
 8
 212. Expenses for production of income.
 
 
 9
 In the case of an individual, there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year--
 
 
 10
 (1) for the production or collection of income;
 
 
 11
 (2) for the management, conservation, or maintenance of property held for the production of income; or
 
 
 12
 (3) in connection with the determination, collection, or refund of any tax.
 
 
 13
 The Commissioner contends that, for the purposes of 265(1), amortization of the cost of a life estate should be construed as falling within the ambit of 212 in order to prevent what the enactment of 265(1) sought to proscribe-- the equivalent of a 'double tax deduction' through the acquisition of tax-exempt securities, income from which is not taxable. While we agree that the underlying purpose of 265 is to prevent multiple tax benefits, Congress was explicit in limiting the disallowance to expenses covered 212 in the same legislative enactment where for the first time it provided for a deduction for depreciation on property held for the production of income not used in a trade or business. 26 U.S.C. 167(a)(2).[1] It cannot be disputed that an amortization deduction, being so closely analogous to depreciation, is properly allowable under 167(a)(2) as 'exhaustion * * * of property held for the production of income.'[2] See May T. Hrobon, 41 T.C. 476, 503 (1964); William N. Fry, Jr., 31 T.C. 522 (1958), aff'd, 283 F.2d 869 (6 Cir. 1960), Acq.Rev.Rul. 62-132; Bell v. Harrison, 212 F.2d 253 (7 Cir. 1954), Acq.Rev.Rul. 62-132; Wolff v. Commissioner, 7 T.C. 717, 721 (1946), Acq. 1947-1 Cum.Bull. 4; Floyd M. Shoemaker, 16 B.T.A. 1145, 1150 (1929); Elmer J. Keitel, 15 B.T.A. 903, 906-908 (1929).[3]
 
 
 14
 Furthermore, it has been traditionally accepted that amortization does not fall within the usual meaning of 'expenses,' but is considered an exhaustion of a capital asset of limited income-producing duration. If amortization is an 'expense,' it follows that depreciation would also fall into that category, yet for a half-century Congress has deemed it necessary to provide for depreciation deductions separately from 'expense' deductions.[4] Against this background the Commissioner's contention that, for the purpose of cases like the one at bar, 'amortization' and 'expenses incurred in the production of income' should merge in meaning must find support outside the language of the statute.
 
 
 15
 The legislative history of the relevant enactments, however, is colorless. It does not indicate one way or the other why Congress chose to impose a limitation on 212 expenses but chose not to impose the same limitation with regard to deductions for 167(a) depreciation of non-business property. The Commissioner's argument on this point is at most one of policy. He argues in his brief that 'there appears to be no logical reason why Congress, on one hand, would have intended to prohibit the allowance of non-business expenses allocable to tax-exempt interest, and, yet, on the other, allow non-business amortization deductions allocable to tax-exempt interest income.' In urging us not to 'attribute irrationality to the drafters of the provision,' the Commissioner refers us to J. C. Penney Co. v. C.I.R., 312 F.2d 65 (2 Cir. 1962) (Friendly, J.), a case in which our court held that Congress did not mean what it had said by a cross-reference in a section inserted in the 1954 Internal Revenue Code during a late stage of its passage. J. C. Penney is clearly inapposite to the case at bar, however, for in that case there was a wealth of legislative history that demonstrated that the drafters could not possibly have meant what they wrote. When a statute is 'plain and unambiguous' and there is no evidence of a contrary purpose than the purpose appearing in the precise terms of the statute it 'transcends the judicial function' to rewrite the statute to conform to considerations of policy. See Iselin v. United States, 270 U.S. 245, 250-251, 46 S.Ct. 248, 70 L.Ed. 566 (1926); Hanover Bank v. C.I.R., 369 U.S. 672, 687-688, 82 S.Ct. 1080, 8 L.Ed.2d 187 (1962). If the facts of this case demonstrate a tax loophole Congress, not the courts, should plug it.
 
 
 16
 The judgment of the Tax Court is affirmed.
 
 
 
 [1]
 In 1942, Congress in 121 of the then Revenue Act amended 23(l) (Now 167) to provide for the first time a depreciation deduction for property held for the production of income and at the same time and in the same section, 121, amended 24(a)(5) (now 265) to disallow deductions attributable to taxexempt interest otherwise allowable under 23(a)(2) (now 212). It seems unlikely, therefore, that Congress did not have 23(l) (now 167) in mind when it amended 24(a)(5) (now 265) inasmuch as both sections were amended at the same time in the same statute
 
 
 [2]
 Section 167(a)(2) provides:
 
 
 [167]
 Depreciation
 (a) General rule.
 There shall be allowed as a depreciation deduction a reasonable allowance for the exhaustion, wear and tear (including a reasonable allowance for obsolescence)--
 (2) of property held for the production of income.
 
 
 [3]
 Furthermore, the Treasury Department's Regulations, 1.167(a)-3, defining depreciation of intangible assets, is broad enough to cover an amortization deduction of the type claimed here
 Intangibles. If an intangible asset is known from experience or other factors to be of use in the business or in the production of income for only a limited period, the length of which can be estimated with reasonable accuracy, such an intangible asset may be the subject of a depreciation allowance. * * *
 See Kiro, Inc., 51 T.C. 155, 167 (1968).
 
 
 [4]
 See 1.212-1(n) of the Regulations which provides:
 Capital expenditures are not allowable as nontrade or nonbusiness expenses. * * * Where * * * the item may properly be treated only as a capital expenditure or where it was properly so treated under an option granted in subtitle A of the Code, no deduction is allowable under Section 212. * * *
 It would naturally seem that the cost of a purchased life estate whould fall within that section as an 'item (that) may properly be treated only as a capital expenditure.'
 The Commissioner argues that, as the amortization of certain capital expenditures has been treated by Congress as a 'deferred expense,' see, e.g., 174 (amortization of certain research and experimental expenditures), 177 (election to amortize trademark and trade name expenditures), 178 (depreciation or amortization of improvements made by lessee on lessor's property), 248 (election to amortize organizational expenditures), the amortization here may be similarly treated. However, the provisions of these sections, among others, are special provisions dealing with narrowly defined expenditures posing unique tax problems. In the absence of the type of capital expenditure described therein, the depreciation or the amortization of a capital expenditures is governed by the general provisions of 167.
 The Commissioner urges that where amortization is measured by the useful life of the taxpayer's interest in the property rather than measured by the useful life of the property, it should be treated as a 'deferred expense,' and therefore should logically be treated as a deduction falling within the terms of 212. We do not agree, for the language of 167, see note 2 supra, covers 'exhaustion' in either instance, whether the exhaustion be over the property's useful life to the taxpayer or whether over the total useful life of the property.