T.C. Memo. 1996-472


UNITED STATES TAX COURT


JULIAN P. KORNFELD, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 13169-95.                    Filed October 22, 1996.



<u>Julian P. Kornfeld</u>, pro se.

<u>Clarke L. Randall</u>, for petitioner.

<u>Elizabeth Downs</u>, for respondent.



MEMORANDUM OPINION


TANNENWALD, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's Federal income taxes for the taxable years 1990 and
1991 in the amounts of $11,803.00 and $13,122.00, respectively.
The sole issue for decision is whether petitioner is entitled to

amortize the cost of acquiring a life interest in tax-exempt bonds where others simultaneously acquired the remaining interests.

The case was submitted fully stipulated under Rule 122.[1] All of the stipulated facts, including those contained in the attached exhibits, are found accordingly.

Petitioner resided in Oklahoma City, Oklahoma, at all relevant times, including the time when he filed his petition herein. He filed timely individual income tax returns for 1990 and 1991.

Petitioner is an experienced lawyer, particularly in the fields of business and tax law.[2] He has two daughters, Meredith Kornfeld (Meredith) and Nancy Kornfeld (Nancy), both of whom were adults and college graduates at all relevant times. At those

---

[1] All statutory references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2] The stipulation of facts contains a detailed description of petitioner's experience and of his analysis of the pertinent authorities prior to entering into the transactions involved herein. Petitioner has emphasized the description and the analysis presumably to persuade the Court that his "expertise" should be a significant factor influencing us to arrive at a conclusion favorable to him. Respondent has utilized the description presumably to persuade us that petitioner's tax motivation predominated and should persuade us to decide the instant case in her favor. We consider petitioner's background and analysis peripheral (as to respondent's use of it) and irrelevant (as to petitioner's use of it) to the accomplishment of the task before us, namely, independently to reach our own conclusions based on the stipulated factual elements of the transactions involved.

times, petitioner also had a long-time secretary and administrative assistant, Patsy D. Permenter (Permenter), who was also an adult at such times and not otherwise related to petitioner.

Petitioner, acting through a revocable trust of which he and Permenter were trustees, entered into agreements entitled Joint Purchases of Life Estates and Remainder Interests pursuant to which the parties would identify securities to be acquired in which petitioner would have a life estate and the other parties would have interests as indicated by the following:

(1) May 1, 1989, agreement - remainder interests in Meredith and Nancy;

(2) June 19, 1989, agreement - remainder interest in Nancy;

(3) October 31, 1989, agreement - secondary life interest in Nancy and remainder interest in Permenter;

(4) June 15, 1990, agreement - secondary life interest in Nancy and remainder interest in Permenter.

All of the agreements provided that the parties would identify securities for joint investment by executing an agreed form designated by the parties as Exhibit A, that each would pay a proportionate share of the purchase price of the joint investments and that the disposition of any such investments could be made only upon the direction of all parties.

The bonds purchased were tax-exempt bonds and were acquired from unknown third parties through Prudential Bache Securities

(Prudential Bache) or from Prudential Bache's own inventory of bonds. Prudential Bache confirmed each purchase involved herein by a confirmation slip addressed to the Julian P. Kornfeld Life Estate, with an Oklahoma City address.

After the purchases, but before the closing dates, petitioner would calculate the value of the respective interests in the bonds that he and the other parties were acquiring. The Exhibits A executed by the parties were dated the same day as the Prudential Bache confirmations. Petitioner's calculations were based upon the actuarial values published by the Internal Revenue Service. The allocations reflected in such calculations are not disputed by respondent.

Based upon the aforesaid calculations, petitioner would furnish Nancy, Meredith, and Permenter with the amounts indicated as their share of the purchase price. This would be accomplished either by check or wire transfer to the respective bank accounts before the closing date of the purchase. During the years in issue, Nancy's bank account was in Minneapolis, Minnesota, Meredith's bank account was in Los Angeles, California, and Permenter's in Oklahoma City, Oklahoma.

With respect to every purchase, the amounts furnished by petitioner were deposited in the bank accounts. Thereafter, and before the closing dates, Nancy, Meredith, and Permenter issued their separate checks to Prudential Bache in the amounts reflected in petitioner's calculations as allocable to the

interest each was acquiring.  The monthly statements of Prudential Bache for the Julian P. Kornfeld Life Estate indicated the separate receipt of funds from petitioner, Meredith, Nancy, and Permenter.

Neither Meredith, Nancy, nor Permenter was under any legal obligation to utilize the funds received from petitioner to acquire their interests in the purchased bonds.  However, they and petitioner intended that the funds would be so used.

Annexed hereto as Exhibit 1 is a schedule reflecting the date and amount of each bond purchase involved herein, the closing date of Prudential Bache, dates of petitioner's gifts[3] to the other parties, and the dates of payments by petitioner and the other parties.

Petitioner furnished Nancy, Meredith, and Permenter with funds in rounded amounts equal to the payments they made to Prudential Bache.  Neither Nancy, Meredith, nor Permenter expended any amount in excess of the funds so furnished to make any part of such payments.

Petitioner filed gift tax returns reflecting the gifts to Nancy, Meredith, and Permenter but paid no tax on account of the unified credit.  See sec. 2505.  Petitioner reported no other gifts to Meredith, Nancy, or Permenter during the years at issue.

_____

[3]  The use of the word "gifts" is not dispositive of the subject of the gifts by petitioner, i.e., of funds or interests in the bonds, which is the critical issue herein.

When purchased bonds were redeemed, each party to the agreements received their proceeds based upon the actuarial values thereof published by the Internal Revenue Service. The values are not disputed by respondent.

At issue is the right of petitioner to amortize, ratably over his expected life, his cost of acquiring his life interests in bonds purchased pursuant to joint purchase agreements. Petitioner argues that he purchased his interests and that the other participants acted independently in purchasing their interests. Respondent contends that: (1) While, in form, the purchases were by petitioner and the other participants, i.e., petitioner's daughters and secretary, in substance, petitioner purchased the bonds as a whole, retaining life interests for himself and donating the remaining[4] interests to the other participants with the result that (2) petitioner split nondepreciable assets and is not entitled to an amortization deduction. We dealt with the same issue in Gordon v. Commissioner, 85 T.C. 309 (1985), in which we sustained respondent's contentions and rejected the taxpayer's claim of an amortization deduction, and in Richard Hansen Land, Inc. v. Commissioner, T.C. Memo. 1993-248, where we applied Gordon and rejected respondent's contentions and sustained the taxpayer's

---

[4] We use the word "remaining" instead of "remainder" because of the secondary life interest of Nancy in some of the bonds and the fact that the proper characterization of that interest is in question. See infra pp. 13-14.

claim of an amortization deduction in a case involving the acquisition of land.

Initially, we note that the fact that the bonds involved herein were tax-exempt bonds does not operate to deprive petitioner of his claimed amortization deduction.  See Gordon v. Commissioner, supra at 322 n.6 (citing Manufacturers Hanover Trust Co. v. Commissioner, 431 F.2d 664 (2d Cir. 1970), affg. a Memorandum Opinion of this Court).[5]  We further note that there is no issue as to the amount of petitioner's claimed amortization deduction if we hold that he is entitled to such deduction.

The basic question is whether or not the transactions were structured in the right way, i.e., whether they were in fact what they appear to be in form.  See Gordon v. Commissioner, supra; Hobby v. Commissioner, 2 T.C. 980, 985 (1943).  This is a question that the courts have been faced with many times in a variety of contexts.  Compare Cumberland Public Service Corp. v. Commissioner, 338 U.S. 451 (1950), with Commissioner v. Court Holding Co., 324 U.S. 331 (1945) (whether a sale was by a corporation or its shareholders).  Compare also Zenz v. Quinlivan, 213 F.2d 914 (6th Cir. 1954), with Wall v. United States, 164 F.2d 462 (4th Cir. 1947) (dividend or capital gain on redemption of shares of corporation).  We see no need to repeat

---

[5]  We note that the extent to which amortization deductions could be taken with respect to tax-exempt income-producing property was not changed by the enactment in 1989 of sec. 167(e).  See infra p. 13 and note 6.

the underpinnings of that question which we explored in detail in Gordon v. Commissioner, supra, and Richard Hansen Land, Inc. v. Commissioner, supra. We think it important, however, to recognize, as we did in those cases, that the fact that tax reasons generated the choice of the structure used is not, in and of itself, sufficient to require us to sustain respondent.

Against the foregoing background, we proceed to examine the various elements involved herein, upon which the base resolution of the ultimate factual question, i.e., were there separate purchases of a life interest by petitioner and of the remaining interests by the other parties or was there a purchase of the entire ownership of the bonds by petitioner followed by a gift of the interests in the bonds remaining after petitioner's retained life estate. The burden of proof is on petitioner, Rule 142(a), and that burden is not lessened because this is a fully stipulated case. Borchers v. Commissioner, 95 T.C. 82, 91 (1990), affd. 943 F.2d 22 (8th Cir. 1991).

Some preliminary observations are in order. First, we recognize, as we did in Gordon v. Commissioner, supra, that the holders of the remaining interests were related to petitioner, i.e., daughters, or closely identified with petitioner, i.e., petitioner's longtime secretary.[6] While such relationships are

---

[6] While Permenter was not "related" to petitioner in the same way as his daughters, see secs. 167(e)(5)(B) and 267, we are satisfied that, on the basis of the record herein, her
(continued...)

not determinative, their existence provides a basis for "skepticism" in accepting the form of the transaction.  See Gordon v. Commissioner, 85 T.C. at 325-326.  Moreover, as we also noted in Gordon, the pattern of tax benefits flowing from the transactions involved herein are such as to constitute "a yellow caution signal on our road to decision."  Id. at 326.

Second, a substantial portion of the stipulation dealt with assets possessed by the participants other than petitioner during the years at issue.  While the values of those assets, particularly those of a corporation owned by the daughters, is not clearly established, it would appear that substantial amounts were involved and petitioner argues that the availability of such assets as a potential source of payment for the remaining interests of Nancy, Meredith, and Permenter in the bonds should be considered in determining whether such interests were independently purchased.  We agree with respondent that the availability of such assets is irrelevant to the issue before us. That such assets might have been used does not answer the question of how to characterize the transactions involved herein where the funds used were supplied by petitioner.[7]

---

[6](...continued)
"relationship" should not be treated differently in view of the fact that we have concluded that sec. 167(e) does not impact our conclusion.  See infra p. 13.

[7]  We note that in Gordon v. Commissioner, 85 T.C. 309, 328 (1985), we indicated that the presence of other assets available
(continued...)

Finally, petitioner relies heavily on cases involving what he claims to be analogous transactions, especially those dealing with gifts of stock to a charity followed by a redemption of such stock by the corporation.  We dealt at some length with these cases and cases involving seemingly analogous situations in Gordon v. Commissioner, 85 T.C. at 327, and concluded that such cases "are sufficiently distinguishable in terms of their factual context and the issue involved so as not to furnish any significant guidance to our decision herein."  We continue to adhere to that view.

Petitioner attaches great significance to the fact that gift tax returns were filed in respect of all the funds provided by petitioner, whereas in Gordon v. Commissioner, supra, most of the transfers of funds by the taxpayer to the holder of the remainder interest were not reflected in any gift tax returns.  We are not persuaded that this provides a significant basis for distinguishing Gordon.  Such returns merely reflect the values of the gifts[8] to the recipients which happen to coincide with the amounts of the funds transferred.  Although the gift tax returns stated that the gifts were cash gifts, such self-serving labeling is not determinative and its impact is not significant in light

---

[7](...continued)
to the holder of the remainder but not used was a factor unfavorable to the taxpayer's position.

[8]  See supra note 3.

of the other factors discussed herein which cause us to conclude that interests in the bonds themselves were the subject matter of the gifts.  Moreover, the tax impact of the gifts, i.e., the potential loss, at an indeterminate future date, of a portion of petitioner's estate tax exemption by virtue of the utilization of the unified credit is a far cry from the income tax consequences of the receipt of wages by Hansen in Richard Hansen Land, Inc. v. Commissioner, T.C. Memo. 1993-248.

Petitioner's principal argument rests on the absence of any legal obligation on Nancy, Meredith, or Permenter to use the funds provided by petitioner to acquire the remaining interests. While this is an important element, it is not controlling, as our opinion in Gordon v. Commissioner, supra, makes clear.  Indeed, as we pointed out in Gordon, the freedom of Nancy, Meredith, and Permenter legally to refuse to utilize the funds provided by petitioner to pay for the remaining interests "is of minimal significance where * * * the facts reveal that the entire transaction was set up around the expectation that the joint implementation of the * * * [taxpayer's] investment strategy would occur."  Gordon v. Commissioner, 85 T.C. at 331 n.16.  We think that the pattern of the transactions herein unquestionably falls within the "expectation" parameter.[9]  Unquestionably, petitioner was the architect of the investment strategy and

---

[9]  Cf. Muserlian v. Commissioner, 932 F.2d 109, 113 (2d Cir. 1991, affg. T.C. Memo. 1989-493.

orchestrator of its implementation.  We are aware that the parties have stipulated that 'Because of Julian's tax, financial, and business expertise, Meredith and Nancy generally consult with Julian about all major or significant financial transactions.'  But such a general description lacks the quality necessary to support the conclusion that there was meaningful advance consultation and exercise of independent judgment by Nancy and Meredith in respect of the specific transactions involved herein, to say nothing of the fact that the stipulation does not include any reference to Permenter.  Moreover, we note that Exhibits A executed by petitioner and Nancy, Meredith, or Permenter were uniformly dated the same day as the confirmations from Prudential Bache.  The amounts of funds provided from time to time by petitioner to Nancy, Meredith, and Permenter were, within pennies, equal to the amounts of the checks they issued to Prudential Bache; by way of contrast, the separate funds of the trust in Gordon v. Commissioner, supra, were used albeit to a minor extent.  The time spans between confirmation, payment, and closing dates reflected in Exhibit 1 to this opinion are such as to indicate that neither Nancy, Meredith, nor Permenter had any meaningful opportunity or desire to exercise dominion and control over the funds and elect not to participate in the purchases.

In short, we are satisfied that, on the basis of the record as a whole, petitioner, like the taxpayer in Gordon v. Commissioner, supra, acquired the entire ownership in the bonds

and then divided that ownership by retaining a life interest and transferring the remaining interests to Nancy, Meredith, and Permenter.

In arriving at this conclusion, we recognize that we reached an opposite result in Richard Hansen Land, Inc. v. Commissioner, supra. However, the factual circumstances in Hansen Land were quite different; in particular, in the case of Richard Hansen, he acquired the remainder interest with funds that he received as taxable income in a transaction whose bona fides were not questioned by respondent. His wholly owned corporation, whose separateness was also not questioned by respondent, acquired the amortizable term interest, and the Kammerzells utilized their own separate funds.

Concededly, the disposition of cases such as the one before us inevitably involves the difficult task of line drawing. But, as we have previously observed:

> the necessity of drawing lines is part of the daily grist of judicial life and should not influence us to adopt another rule simply to avoid difficulties in application. See Estate of Lillie MacMunn Stewart [v. Commissioner], 52 T.C. 830, 836 (1969), revd. on other grounds 436 F.2d 1281 (3d Cir. 1971). [Allen v. Commissioner, 66 T.C. 340, 346 (1976); fn. ref. omitted.]

In view of our conclusion, we have no need to address the application of section 167(e) in respect of the transactions under the October 31, 1989, and June 15, 1990, agreements and the question whether Nancy's secondary life interest constituted a

remainder interest for the purpose of that section.  See H. Rept. 101-247 at 1361-1362 (1989); H. Conf. Rept. 101-386 at 625-626 (1989).

In view of the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.


[EXHIBIT 1 (PAGES 14 - 19) NOT REPRODUCIBLE FOR ELECTRONIC DISSEMINATION.]