D. BRUCE FORRESTER, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 2634. Promulgated March 2, 1945.

*John H. McEvers, Esq.*, and *John W. Reed, Esq.*, for the petitioner.
*Gene W. Reardon, Esq.*, for the respondent.

912

OPINION.

DISNEY, *Judge*: Most of the issues herein relate to the gain realized or loss sustained by petitioner upon the liquidation in December 1938 of the Forrester Co. In his return for 1938, he reported a loss of $39,597.06, computed as follows, of which one-half was claimed as a deduction:

Receipts_____ $107,902.56
Cost of stock:
    150 shares acquired 12/7/22_____ $94,530.90
    150 shares acquired 10/22/26_____ 52,968.72
                                    147,499.62

    Loss _____ 39,597.06

The parties agree that the liquidating dividends received by petitioner in cash and other assets had a value of $107,902.56, as reported

by petitioner in his return. In his determination of the deficiency, the respondent held that the stock acquired in 1922 had a cost basis of $49,554.02, an amount equal to petitioner's cost of the Nace Co. stock exchanged therefor; that the shares acquired in 1926 had a basis of $25,515, an amount equal to the fair market value thereof; that the total cost should be reduced by $11,219.50 for a capital distribution in the December 1929 dividend; and that as the Forrester Co. had earnings and profits accumulated since February 28, 1913, of $81,197.86, and petitioner owned one-half of the stock of the corporation, of the resulting gain, an amount equal to 50 percent of the earnings, or $40,598.93, was taxable to petitioner as a dividend, petitioner having elected to receive the benefits of section 112 (b) (7) of the Revenue Act of 1938. The adjustments made by the respondent in the cost basis of the stock are in issue.

Petitioner concedes upon brief that the 150 shares of stock acquired in 1922 had a cost basis of $49,554.02, as determined by the respondent.

### Cost of 150 Shares Acquired October 22, 1926.

The parties are now in agreement that the basis for these shares is cost, but differ on how the cost should be determined. They have stipulated that the stock of the General Box Co. acquired in the same transaction had a cost basis of $22,365. In his petition, petitioner alleged that his cost was $48,235.85. Upon brief he contends that the stock had a cost of $53,382.35, computed as follows:

| | |
|---|---:|
| Cost of annuity for his father and mother | $39,646.50 |
| Liability assumed for his father | 36,100.85 |
| | 75,747.35 |
| Less cost of General Box Co. stock | 22,365.00 |
| | 53,382.35 |

The difference of $5,146.50 in the cost bases is due to a present contention that the cost of the annuity, which constituted part of the consideration paid, was $39,646.50, an amount which petitioner would have had to pay a standard life insurance company for a like annuity, rather than $34,500, the amount actually paid to the annuitants under the contract prior to their deaths.

Upon brief, respondent contends that petitioner's cost of the annuity contract was $34,500, or, if it was the greater amount of $39,646.50, as contended by petitioner, then that adjustments reducing it to the lower amount are necessary on account of actualities, and he concedes that the cost basis for the stock is $48,235.85 ($34,500 plus $36,100.85, minus $22,365), if we agree with his position that petitioner is taxable on gain realized from the acquisition of the account in 1938 for less than its face amount. Respondent contends, in the

alternative, for a cost of $18,680.31 by using as cost of the liability assumed its discount value of $6,545.31 on October 22, 1926, and that if we consider the transactions in December 1935 and 1938 respecting the account as a reduction of the purchase price of the stock, the cost should be adjusted on the basis of the discount value of the account when the transactions occurred.

In *Mastin* v. *Commissioner*, 28 Fed. (2d) 748, affirming 7 B. T. A. 72, there was a transfer of stock in consideration of an agreement of the transferee to pay living expenses of the transferors for the remainder of their lives. It was held that no loss could be determined until the transaction was completed at the time of the deaths of the transferors and that the payments made by the transferee were capital expenditures for the stock. The facts in *Citizens National Bank* v. *Commissioner*, 122 Fed. (2d) 1011, are very similar to those here. There the bank in 1920 received title to a piece of improved real property for its agreement to pay the owner $200 a month for life. The bank sought to deduct the payments in 1936 as rent or a loss, or, in the alternative, a portion of the payments applicable to the grantor's interest in the building, which was demolished in 1923. One of the grounds advanced by the bank for an expense or a loss deduction of the entire payments was that its agreement constituted a contract to pay an annuity of a specified value and as the payments prior to 1936 exceeded such amount, the payments in 1936 constituted an expense or a loss to it and gain to the recipient. The court said:

* * * In the instant case the theory is purely fictitious and bears no actual relation to the transaction between the parties. The relation in this instance is entirely contractual. The bank bargained to purchase and Frank Baird to sell the right to the possession of the premises during the life of Baird. Nothing in the contract relates to the market value nor to Baird's life expectancy. The parties were at liberty to pay and receive any price agreed upon whether more or less than market value. The amount agreed upon, although payable in installments contingent as to number during life, was a capital investment and is not deductible either as a business expense under § 23 (a) nor as a loss under § 23 (f) of the Act. * * *

Here, there is no indication that the parties bargained on the basis of what an annuity of $500 a month for the lives of petitioner's parents would cost from a standard life insurance company. The arrangement was simply an agreement to pay the amount without regard to cost. Cf. *May Rogers*, 31 B. T. A. 994; *Anna L. Raymond*, 40 B. T. A. 244. As the survivor of petitioner's father and mother died before the taxable year, we know petitioner's capital outlay and need not apply a theoretical method to ascertain his entire cost. Petitioner elected to obligate himself to pay the amount rather than purchase an annuity contract to relieve him of the liability and is bound by his choice of possible plans. See *Helvering* v. *Butterworth*, 290 U. S. 365.

The case of *Helvering* v. *American Chicle Co.*, 291 U. S. 426, does not support petitioner's view. There the question was whether the purchase by the corporation of bonds, payment of which it had assumed in the purchase of all of the assets of a corporation, at less than their face amount resulted in taxable gain, or required an adjustment of the cost of the assets. The court, from the meager facts, held that the difference was taxable as gain. Here, there is no cost basis to adjust, as petitioner never paid out $39,646.50 for an annuity contract, or possible gain to tax on account of any assumption of liability. The question is simply petitioner's cost. He paid out $34,500 under his agreement and the final payment discharged his liability for all time. His actual outlay of $34,500 constitutes his cost.

The indebtedness of $36,100.85 assumed by the petitioner was an open account for withdrawals made by his father. The unconditional assumption by petitioner of the liability was part of his cost of the stock. *F. Tinker & Sons Co.*, 1 B. T. A. 799; *Farmers Cotton Oil Co.*, 27 B. T. A. 105; *Cherokee Co.*, 41 B. T. A. 1212; *Johnson Motor Co.* v. *United States*, 6 Fed. Supp. 122. In 1935, nine years after petitioner assumed the debt, the maturity date of the obligation for withdrawals made by petitioner himself and of the debt of another stockholder was extended to June 1, 1957.

Neither the extension of the maturity date nor the sale of the account by the corporation (hereinafter discussed) altered petitioner's liability to pay at maturity the entire debt. Though, because of such extension of time, the $36,100.95 debt had, at the time of the liquidation in December 1938 a discount value of only $12,337.49,[1] such reduction in value came through an extension granted in 1935, so that any taxable gain or gift realized thereby[2] may not be included in our consideration of the taxable year 1938. There was no reduction in purchase price and no adjustment of base. The petitioner's vendor was dead, and the only transaction was with petitioner's creditor, not the vendor of the stock. We hold that the assumption of liability, in the amount of $36,100.85, constituted a part of petitioner's basis in the stock.

### Reduction of Basis for Stock by $11,219.50.

In December 1929 petitioner received a dividend of $19,000 from the Forrester Co. Subsequently, the respondent made a refund to petitioner upon the ground that $11,219.50 of the dividend was a return of capital, and in determining the deficiency for 1938 he reduced

---

[1] Respondent argues in the alternative for a base of $6,545.31, the discount value on October 22, 1926, of the $36,100.85; but at that date the debt was on open account. It was not until 1935 that the extension was granted, so no discount value may be set for October 22, 1926.

[2] *Commissioner* v. *Coastwise Transportation Corporation*, 62 Fed. (2d) 332; *Helvering* v. *American Dental Co.*, 318 U. S. 322.

the basis of petitioner's stock by that amount. The parties agree that if the earnings and profits of the Forrester Co. available for distribution as a taxable dividend on December 8, 1938, should be computed without regard to the profits of the Nace Co. at the time of the transfer in 1922, the basis should be reduced by $11,219.50. Petitioner concedes that if the Forrester Co. had a deficit in its accumulated earnings and profits at the time it was liquidated, respondent's action was proper. Such a conclusion has been reached under the next issue.

It follows from the conclusions reached by us and the concessions of petitioner that the cost basis to petitioner of his 300 shares of stock of the Forrester Co. is $49,554.02 plus $34,500, and $36,100.85, less $22,365 and $11,219.50, or $86,570.37.

### Earnings and Profits of Forrester Co.

In determining that at the time of its liquidation the Forrester Co. had accumulated earnings and profits of $81,197.86 since February 28, 1913, the respondent held that there should be included a pro rata portion of the earnings of the Nace Co. from March 1, 1913, to the time of the transfer in 1922 of a portion of its assets to the Forrester Co. The parties have stipulated that, if the transfer in 1922 was a taxable exchange, or, if the earnings and profits of the Forrester Co. available for distribution as a taxable dividend should be determined without reference to the accumulated earnings and profits of the Nace Co., the Forrester Co. had a deficit of $119,540.23 on December 8, 1938, in profits and earnings, and if the exchange was nontaxable and the Forrester Co. was required to take into account a pro rata portion of the profits of the Nace Co., there were earnings and profits of $39,206.99 on December 8, 1938. The question of whether the Forrester Co. had accumulated earnings and profits available for distribution as a taxable dividend is by agreement of the parties made to depend upon whether or not the 1922 transfer was a taxable exchange. Petitioner contends that *Forrester Box Co.*, 25 B. T. A. 128, is *res adjudicata* of the question.

In that case, involving a loss on the disposition in 1923 of an account receivable acquired in the December 1922 transfer from the Nace Co., we held that the transaction by which the Forrester Co. acquired part of the assets, including the account receivable in controversy, and liabilities of the Nace Co., did not constitute a reorganization under section 202 of the Revenue Act of 1921, and that the petitioner purchased the assets from the Nace Co. for its stock. One of the issues in *Forrester Box Co.*, 43 B. T. A. 657, was the basis for depreciation on buildings acquired in the 1922 transfer. We held that *Forrester Box Co.*, 25 B. T. A. 128, was *res adjudicata* of the question of whether the 1922 transaction was a taxable exchange.

In the *Forrester Box Co.* cases, *supra*, the identical parties were involved. Here, a stockholder of the Forrester Box Co., not the corporation, is the petitioner. Notwithstanding such difference in parties, is the case of the corporation *res adjudicata* of the issue here? The question turns upon whether petitioner, owner of half of the stock of Forrester Co. at the time of the litigation, is in privity with the corporation. *Tait v. Western Maryland Ry. Co.*, 289 U. S. 620.

In *Jahnke Service Co.*, 20 B. T. A. 837 (847), we held that a holding of the Board determining the tax liability of a transferor corporation, in the absence of fraud or collusion in proceedings, was conclusive upon its transferee-stockholder. We said in part: "It is also well settled that a corporation represents its stockholders in all matters within the scope of its corporate powers transacted in good faith by its officers." Like conclusions were reached in *J. E. Duval*, 21 B. T. A. 137, and *Isaac M. Green*, 26 B. T. A. 719. The rule does not differ where there is more than one stockholder. *Nova M. Carney*, 22 B. T. A. 721. In *First National Bank of Chicago v. Commissioner*, 112 Fed. (2d) 260, the rule was applied against a transferee-trustee for income tax liability of the estate of the deceased grantor.

Respondent, upon brief, infers that the established rule as to stockholder-transferees does not apply to the instant situation. The authorities are to the contrary. In *Hawkins v. Glenn*, 131 U. S. 319, the Court said:

* * * We understand the rule to be otherwise, and that the stockholder is bound by a decree of a court of equity against the corporation in enforcement of a corporate duty, although not a party as an individual, but only through representation by the company.

A stockholder is so far an integral part of the corporation that, in view of the law, he is privy to the proceedings touching the body of which he is a member. *Sanger v. Upton*, 91 U. S. 56.

Other statements of the same Court are to the same effect: *Marin v. Augedahl*, 247 U. S. 142, in which prior cases of the Court are cited, including *Bigelow v. Old Dominion Coffee Co.*, 225 U. S. 113 (141), and in which the Court said:

But under the law of Kansas and the general law a stockholder is represented by the corporation to all actions against the corporation for corporate liabilities. The stockholder is by the very law of corporate existence an integral part of the corporation and is bound by a judgment against it in respect of any matter within the scope of corporate powers.

34 C. J. 1026, on the subject of *res adjudicata*, says:

A stockholder is so in privity with, and represented by, the corporation that he is bound by a judgment against the corporation in so far as it deals with corporate rights and liabilities and affects the stockholders as a body. * * *

Obviously, here the judgment affected the stockholders as a body.

The case of *Pressed Steel Car Co.*, a memorandum opinion entered

by this Court on August 16, 1944, cited by the respondent, contained no issue on the conclusiveness of a prior ruling and is not controlling.

We hold that the case of *Forrester Box Co.*, 25 B. T. A. 128, is *res adjudicata* of the question of whether the 1922 transfer from the Nace Co. to the Forrester Co. was a taxable transaction. Accordingly, pursuant to the stipulation, on December 8, 1938, the Forrester Co. had a deficit of accumulated profits and earnings on December 8, 1938, in the amount of $119,540.23.

### Cash Distribution Received in Liquidation.

This question was put in issue by stipulation of the parties, and is important to them because of the limitations imposed by section 112 (b) (7) (E) (ii) of the Revenue Act of 1938 on the amount of recognizable gain in corporate liquidations within the month of December 1938.

Petitioner contends that he received $15,040.59, and respondent contends that he received $28,231.56, or $16,315.59, plus $11,915.97.

The parties stipulated that the corporation had $30,081.18 of cash on hand at the time of its liquidation. Of this amount, petitioner received a check for $16,315.59 and the other two stockholders received checks aggregating $13,765.59. The difference of $2,550 is due to payment of a debt of $1,275 owed by each of the minority stockholders in making the cash distributions. The adjustment made $1,275 available for distribution to petitioner in addition to his pro rata share of the $30,081.18, or $15,040.59. The distribution was made by the corporation as though the stockholders had paid their debts in cash. It is clear that petitioner received $16,315.59 in cash directly from the corporation.

The Forrester Co. assigned to its stockholders its claim against the estate of Bruce E. Nace, which the probate court had allowed in the amount of $23,831.94. By endorsement on the instrument of transfer, dated December 8, 1938, petitioner acknowledged receipt from the other stockholders of $11,915.97, and assigned his one-half interest in the claim in consideration of such payment. The payment was received from the assignees in 1938.

Respondent's argument is that petitioner, in substance, received the amount of $11,915.97 from the corporation. We disagree. The claim of $23,831.94 was a chose in action in the hands of the corporation, and, unlike the indebtedness of $2,550, could not be reduced to cash by the simple method of deducting it from the cash contributions made to the debtor-stockholders. Instead, the corporation made distribution in kind and left to the transferees the matter of reducing it to cash. Petitioner sold his rights in the claim to the other co-owners for cash. The cash he so received came to him by virtue of such disposition of

his interest in the claim, without any act on the part of the corporation or the money passing through its treasury. In fact, its interest in the claim ceased upon delivery of the assignment to its stockholders, and it no longer had any rights in or control over the disposition of the claim. What petitioner received for his interest in the claim came to him from third parties, not from the Forrester Co. Accordingly, we hold that petitioner received only $16,315.59 in cash in the liquidation of the Forrester Co.

### Petitioner's Indebtedness to Forrester Co.

In 1926 petitioner assumed a debt of $36,100.85 of his father to the Forrester Co. for withdrawals. Subsequently, he received or borrowed $48,052.07 from the corporation. In 1935 the corporation extended the maturity date of the debt of $84,152.92 to June 1, 1957, and received petitioner's 300 shares of its stock as security for the account. Like action was taken in respect to the debt of $69,734.82 owed by Bruce E. Nace, the other stockholder, in an open account for withdrawals. Nothing was paid on the accounts thereafter by either debtor.

After the death of Bruce E. Nace, the Forrester Co. filed a claim against his estate for the full amount of the decedent's debt. The probate court having jurisdiction over the estate allowed the claim in the amount of $23,831.94, its discount value. The claim as so allowed was transferred to the corporation's stockholders upon liquidation. The debt of petitioner was transferred to his wife for its discount value of $28,759.34, prior to the liquidation.

In his determination of the deficiency, respondent taxed petitioner on income of $55,393.58 ($84,152.92 less $28,759.34) realized from the corporation's disposition of his account. Upon brief, respondent argues, in substance, that we should treat the transaction as one in which petitioner was the purchaser of his account for $55,393.58 less than the amount owed, and resulting in taxable income to him in that amount under *United States* v. *Kirby Lumber Co.*, 284 U. S. 1, and *Helvering* v. *American Chicle Co.*, *supra*. Petitioner's position is that there was a bona fide sale of the claim to his wife, without a release of any of his liability.

The Forrester Co. was owned and, therefore, controlled by petitioner and Helen Nace Satterlee and Howard F. Nace, children and heirs of William F. Nace. The probate court had fixed the value of the corporation's claim against the estate of William F. Nace at the discount value of the debt and the heirs were the logical persons to acquire the claim for its value, and thereby obtain a release of the stock securing its payment to surrender in the liquidation proceedings. The ruling of the probate court fixed the value to the corporation of its claim against petitioner, and, under the circumstances, the

willingness of the Forrester Co. to dispose of the account at such value is not open to criticism. It was under no compulsion to search the market for a price greater than the value of the claim, or to distribute the claim to petitioner or all the stockholders pro rata. If it had made such a distribution, the distributee or distributees would not have been required to include the property in a computation of taxable gain in the liquidation proceedings at an amount greater than its value.

There is evidence of record to indicate that petitioner was apprehensive of tax liability in 1938 growing out of the disposition by the corporation of its claim against him. Taxpayers are not obliged to so conduct their affairs as to incur or increase their income tax liability, and a transaction may not be disregarded because it resulted from an honest effort to reduce taxes to a minmum. Such designs must be carefully scrutinized, especially where, as here, the taxpayer's wife is concerned, to ascertain whether the transaction is real. *Charles E. Mitchell*, 32 B. T. A. 1093.

Respondent does not contend that Mrs. Forrester had no right to contract for her own account. She employed such legal right by borrowing funds with which to purchase the account without the credit of her husband and thereafter received from petitioner a note for the indebtedness secured by real property received by him in the liquidation. In December 1938 and January 1939 petitioner, as he agreed to, paid a total of $29,000 on his note and thereafter in 1942 and 1943 made additional payments of $5,000 and $4,500, respectively, although his note was not payable until 1957. These payments are evidence of good faith. The gain to the payee resulting from payments received in excess of her cost basis was reported for income tax purposes.

Petitioner did not avoid any liability in the transaction. The result was nothing more, in substance, than a substitution of creditors. If the payee of the note does not pursue all of her remedies for payment of the note upon maturity, it will not be because of her legal inability to do so. Petitioner did not reduce his liability.

Moreover, even if we assume, as the respondent contends, that the petitioner himself was the purchaser of his own obligation, under the circumstances here there would be no gain. The debt was due June 1, 1957, bore no interest, and on the date of purchase its discount value was $28,759.34. At this figure it was purchased. A stranger would have made no profit on purchasing it at that figure; and neither could the petitioner, paying all the obligation was worth. Cases such as *United States* v. *Kirby Lumber Co.*, *supra*, and *Helvering* v. *American Chicle Co.*, *supra*, do not involve the element of future maturity with no interest charge, and are not logically applicable here.

*Expenses of Forrester Co. Paid by Petitioner After Liquidation.*

Petitioner and other stockholders of the Forrester Co., as transferees of its assets, agreed to pay to a trustee amounts necessary to discharge obligations of the Forrester Co. at the time of its liquidation and expenses incident thereto. Amounts aggregating $2,738.58 were contributed to the trustee by petitioner during the years 1938 to 1943, inclusive, and were used by the trustee during the years 1939 to 1943, inclusive, to pay such expenses.

The question is whether petitioner's share of the expenses is deductible in computing his gain from the liquidation of the Forrester Co. Petitioner kept his books and filed his return on the cash basis. None of the amounts contributed by him were paid out by tne trustee in 1938, the taxable year, and it does not appear whether any of the obligations of the corporation accrued in 1938. Amounts paid under circumstances prevailing here are deductible as losses in the year of payment. *John T. Furlong*, 45 B. T. A. 362; *Koppers Co.*, 3 T. C. 62. Cases in point relied upon by petitioner have not been followed by this Court since the *Furlong* case. On this issue we sustain the respondent.

*Decision will be entered under Rule 50.*