SEABOARD COMMERCIAL CORPORATION AND SUBSIDIARY COMPANIES, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

COASTAL MACHINE WORKS, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 32857, 32858, 32859. Filed August 26, 1957.

*John R. Brook, Esq.*, for the petitioners.
*Joseph Landis, Esq.*, for the respondent.

**OPINION.**

Opper, *Judge:*

*Issues 1, 2, 3, and 4.   Estoppel by Judgment and Inventory Loss.*

In the consolidated return filed by petitioner Seaboard, the parent, losses on the liquidation of the inventory of one of its subsidiaries were deducted by the taxpayers and disallowed by respondent.  There

is no controversy as to the amount received but respondent claims that petitioner's basis was smaller than the one it used and hence that a portion of the loss is unallowable. The issue arises in two ways, a claim of res judicata or estoppel by judgment being advanced, as well as a contention on the merits.

The losses in question relate to Bolton Delaware, the successor of Bolton Connecticut, which in turn was the sole stockholder of Automatic. With respect to the year 1942, Automatic, then a member of a different affiliated group, and its then parent, Fireworks, litigated in a proceeding before the Tax Court an issue raised because Fireworks claimed that Automatic's inventory as of December 31, 1942, was overstated. Holding that there was no overstatement and thereby upholding respondent's contention there, the Tax Court employed the same figures for Automatic's closing inventory in 1942 as petitioners contend for here.

We think petitioners must be sustained on the plea of estoppel by judgment. Although some of the parties to this litigation are different, there can be no question that Bolton Delaware, being a successor in interest, is bound by the previous judgment, *Hawkins* v. *Glenn*, 131 U. S. 319; *D. Bruce Forrester*, 4 T. C. 907, 918; *Mills Automatic M. Corporation* v. *United States*, (Ct. Cl., 1937) 19 F. Supp. 247; *Estate of Henry G. Egan*, 28 T. C. 998, and hence is in a position to contend that the prior proceeding is likewise binding upon the other party, who of course was the same in both cases. The issue in the prior proceeding, involving as it did the content and basis of Automatic's inventory, determined that the basis of that inventory was no smaller than the amount carried on Automatic's books. The same inventory is in issue here. Moreover, the opening inventory pertaining to the first instant of the calendar year 1943 is necessarily the same figure.[4] "Of course, the closing inventory becomes the opening inventory of the next year * * *." McMullen, Federal Income Tax Accounting, p. 200. The determination in the prior case is hence conclusive here as to the fact there determined. *The Evergreens*, 47 B. T. A. 815, affd. (C. A. 2) 141 F. 2d 927, certiorari denied 323 U. S. 720; and see *Commissioner* v. *Sunnen*, 333 U. S. 591; *Tait* v. *Western Md. Ry. Co.*, 289 U. S. 620.

It does not call for a different result that in the prior proceeding the decision went against petitioners there because of a failure of proof. *Fairmont Aluminum Co.*, 22 T. C. 1377, affd. (C. A. 4) 222

[4] * * * When a merchant keeps inventories, costs do in effect become suspense items, for, although he credits himself with the cost of all articles bought during the year, he charges himself in his closing inventory with the cost of those not yet sold, unless he has "written up" or "written down" the inventory. Since these two items cancel each other in the return for the year of purchase, he is free to credit himself anew with the cost of all articles carried over, and this he does by entering the cost in his opening inventory for the following year. * * * [*Commissioner* v. *Dwyer*, (C. A. 2) 203 F. 2d 522, 523, affirming a Memorandum Opinion of this Court filed June 29, 1951.]

1048

F. 2d 622, certiorari denied 350 U. S. 838. We accordingly determine the inventory issues in petitioners' favor without the necessity of examining the merits.

### Issue 5. Deferred Labor Costs.

Under the first issue (estoppel by judgment) petitioners argue on brief that—

Respondent is estopped from reducing or eliminating * * * the loss sustained by Bolton Manufacturing Corporation on Collier Multiple Purpose and U–6 Hob Thread Milling Machines referred to as deferred labor trainee costs in the sum of $43,023.88 or in any amount, *in that the value of these items as they appear in the inventory of Automatic (predecessor of Bolton, Delaware), at the close of the year ending December 31, 1942, upon which value these claimed losses are predicated,* has been judicially determined * * * [by the decision in the *Fireworks* case]. [Emphasis added.]

We have held, as to the first issue, that the *Fireworks* decision conclusively determines, for purposes of this proceeding, the value of Automatic's (Bolton Delaware's) closing and opening inventory for 1942 and 1943, respectively. Any value for the work-in-process opening inventory of the Collier Multipurpose and U–6 Hob Thread milling machines representing deferred labor training costs will consequently be included in the allowable loss. The item is apparently advanced by petitioners as a separate question only in the alternative. Having decided the primary issue with respect to the *Fireworks* decision in accordance with petitioners' claim, the present contention need not be further discussed. If there is any dispute as to the amounts to be included in the inventory, that may be settled in the recomputation under Rule 50.

### Issue 6. Net Loss Carryover of Automatic.

Petitioners claim to be entitled to the benefit of a net loss carryover by reason of the operations of Automatic in the year 1942. The factual background is somewhat complicated. Automatic's original fiscal year ended March 31, 1942. On July 31, 1942, Automatic's stock was acquired by Fireworks and Automatic became a part of Fireworks' consolidated group. The fiscal year of this group ended August 31, 1942, and a consolidated return including the aliquot part of Automatic's income for the short fiscal "year" was set up by the Fireworks group.

At practically the end of 1942 (December 22), Automatic's stock was acquired from the Fireworks group by the Seaboard group. And when, in 1944, a consolidated return for the fiscal year 1943 was filed by the Fireworks group, it purported to include the continuing loss of Automatic for the portion of that year in which it was a member

of the Fireworks consolidation. This was precisely in accordance with respondent's regulations and comports with the concept of income and losses of consolidated groups and the effect of possible changes in their composition. Regs. 104, sec. 23.13 (e).

Petitioners, nevertheless, contend that they are entitled to carry over into their own fiscal year 1943 the net losses suffered by Automatic for the fiscal periods ended August 31, 1942, and December 31, 1942. The statement of their contentions in this respect in their brief (p. 84) is as follows:

122/153rds of the net operating loss of $375,190.54 for the fiscal year ended August 31, 1942, or $299,171.54 may be carried over to the calendar year ended December 31, 1942. Since this was also a loss year, said sum may be carried over to the calendar year 1943.

The net operating loss for the calendar year ended December 31, 1942 of $196,243.70 may be carried over to the calendar year 1943 and to the extent not utilized in 1943 may be carried over to Bolton, Delaware's 1944 taxable year.

As we understand the contention, petitioners are claiming a total of net loss carryovers on account of Automatic's operations in 1942 of slightly less than $500,000, notwithstanding that these losses were suffered during a period virtually all of which found Automatic in a different consolidated group. Although Automatic was acquired by Bolton Connecticut, and subsequently merged into Bolton Delaware, and although the parties advance arguments dealing with the situation where a merged corporation attempts to take the loss carryover of a predecessor, *Stanton Brewery* v. *Commissioner*, (C. A. 2) 176 F. 2d 573, reversing 11 T. C. 310; *Koppers Company* v. *United States*, (Ct. Cl., 1955) 134 F. Supp. 290, certiorari denied 353 U. S. 983; *Newmarket Manufacturing Company* v. *United States*, (C. A. 1) 233 F. 2d 493, certiorari denied 353 U. S. 983; *Libson Shops, Inc.* v. *Koehler*, 353 U. S. 382, we think the issue must be disposed of on different grounds.

Petitioners contend that the consolidated return filed by the Fireworks group for the fiscal year beginning September 1, 1942, could not properly include the net losses suffered by Automatic between that date and the end of 1942 and claimed as carryovers here by petitioners. This contention is made on the related grounds that the consents purporting to include Automatic in the Fireworks group were signed by unauthorized officers, and that by the time the Fireworks consolidated return was filed, Automatic had been liquidated and hence was incapable of participating in that action. But we emphasize that the losses sought to be availed of were suffered while Automatic was a subsidiary of Fireworks, not of Seaboard. As we have seen, the entire concept of consolidated returns involves a continuation of that procedure as long as any of the participating corporations are asso-

ciated with the group.[5] To this arrangement Fireworks and Automatic necessarily agreed when they filed a concededly valid return for their fiscal year ended August 31, 1942.

While there seems to be a dearth of cases dealing with the matter, we see no escape from the conclusion that, whether a positive or negative figure, Automatic's income while it was affiliated with Fireworks, which was until virtually the end of the calendar year 1942, had to be included by Fireworks when it filed a subsequent return, notwithstanding that as of the filing of the return Automatic was no longer an affiliate. Regs. 104, sec. 23.13 (e). Automatic's losses for both August 1942 and September-December 1942 were presumably used by the Fireworks group to reduce its net income, through the filing of consolidated returns.[6] This being so, it could not reasonably be concluded that the net operating loss of a part of a different business could be carried over by petitioners for any period prior to Automatic's affiliation with the present petitioners. See *Lisbon Shops, Inc.* v. *Koehler*, *supra* (decided since the briefs herein were submitted). This conclusion is by no means unjust but rather precludes an otherwise inequitable result. The economic loss during Automatic's prior affiliation was borne not by petitioners but by the Fireworks group. That it should be entitled to the tax consequences of the practical realities seems a not unreasonable outcome.

There were, it is true, a few days between December 23 and December 31, 1942, when Automatic was an affiliate of petitioners. We find no claim for the allowance of a net loss limited to that short period. Nor is there in the record any proof that losses were actually suffered during this time, consisting possibly of no more than 4 or 5 working days, or, if there were, what was their amount.[7] As the case is presented, both from the evidence of record and the arguments on the brief, we treat that limited area as not in controversy.

Respondent's action on this issue seems to us to have been correct.

*Issue 7.   Interest Deduction.*

During 1943, petitioner Seaboard claims to have received from its affiliates Bolton Delaware and Coastal interest totaling approximately

---

[5] Regulations 104.

SEC. 23.11 (a).   *Consolidated Returns Required for Subsequent Years.*

If a consolidated return is made under these regulations for any taxable year, a consolidated return must be made for each subsequent taxable year during which the affiliated group remains in existence unless (1) a corporation * * * has become a member of the group during such subsequent taxable year, or (2) Chapter 1 of the Code to the extent applicable to corporations, or these regulations, which have been consented to, have been amended * * *, or (3) the Commissioner * * * grants permission to change.

[6] Parenthetically, it may be noted that petitioner here is claiming as a carryover even the loss taken in the concededly valid consolidated return filed by the Fireworks group for the period ended August 31, 1942.

[7] Fireworks excluded 9/122 of the September–December loss from its return. But there is no proof here that this correctly apportions any actual losses.

$212,000. It reported these amounts as income on its consolidated excess profits tax return, and at the same time attributed them as deductions to the two subsidiaries. The latter were disallowed by respondent.

Since respondent at the same time reduced Seaboard's income by an identical figure, it may seem puzzling that petitioner resists his action. The explanation lies in the benefit to which the subsidiaries would be entitled by way of excess profits credit carryover in subsequent years when they did not file consolidated returns.

We have been unable to find any facts upon which to base a conclusion on this issue in petitioner's favor. As far as appears, the record contains no figures as to the amount of interest involved; nor indeed whether any was actually paid or accrued; nor even whether there existed a bona fide indebtedness on which interest could be predicated. See *Autenreith* v. *Commissioner*, (C. A. 3) 115 F. 2d 856, affirming 41 B. T. A. 319. If these interest figures lurk somewhere in the evidence, it was incumbent upon petitioner to request findings setting forth the necessary facts and to accompany them by appropriate record reference. Rule 35 (*e*) (3), Tax Court Rules of Practice (Jan. 1, 1951). No such findings have been requested; no such references appear; and we are apprised of no source available to supply them. Clearly, the tax return itself, besides being inconclusive here, cannot be regarded as more than a statement of petitioner's original claim, *Watab Paper Co.*, 27 B. T. A. 488, 506, appeal dismissed (C. A. 8) 68 F. 2d 998, 1021; *Louis Halle*, 7 T. C. 245, 247, affd. (C. A. 2) 175 F. 2d 500, certiorari denied 338 U. S. 949; *Leonard B. Willits*, 36 B. T. A. 294, 297, and the deficiency notice as no more than its denial and possibly respondent's stated reasons therefor. *Jamaica Water Supply Co.*, 42 B. T. A. 359, 367, affd. (C. A. 2) 125 F. 2d 512, certiorari denied 316 U. S. 698; *Charles F. Ayer*, 7 B. T. A. 324, 328, affd. (C. A., D. C.) 26 F. 2d 547. This is especially true here where the effect of the two items was merely an offset so that the consolidated return showed no greater or smaller income as a result, and respondent's disallowance merely parrots the return. For failure of any proof, we are forced to reject petitioner's contention on this issue.

Petitioner's brief makes a similar claim as to Bolton Delaware's declared value excess-profits tax. In addition to what has already been said, this matter is not even in issue, no assignment of error having been included in the petition. Rule 7 (*c*) (4) (*D*), Tax Court Rules of Practice (Jan. 1, 1951).

*Issues 8 and 9. Interest and Service Charges.*

In 1944 and 1945 Bolton Delaware was indebted to Seaboard in a considerable amount. It deducted the interest charges which the

proof shows and our findings state were paid in those 2 years. In 1945 Seaboard also established standby financing for Bolton Delaware, and for that it charged and Bolton Delaware paid a service fee. All three deductions were disallowed by respondent acting on the authority of section 45, I. R. C. 1939.[8]

There seems no dispute as to the underlying facts, and from the evidence we have found that the charges in question were those which would have been made between unrelated enterprises dealing at arm's length. It follows that the amounts were reasonable and the purpose justified. Even if section 45 would otherwise be applicable, a point which we do not reach, respondent was not authorized to deny petitioner's right to the deductions. *Chelsea Products, Inc.*, 16 T. C. 840, affd. (C. A. 3) 197 F. 2d 620; *Welworth Realty Co.*, 40 B. T. A. 97. Respondent's determination in this respect is accordingly disapproved.

## Issue 10.  Carryovers From 1941 and 1942.

Petitioners allege that respondent erroneously disallowed excess profits credit carryovers of Seaboard from 1941 and 1942. This contention was so summarily referred to as to lead respondent to assume it had been abandoned. Although petitioners protest that assumption, they still request no findings concerning the facts justifying these carryovers, as is their obligation. Rule 35 (*e*) (3), Tax Court Rules of Practice (Jan. 1, 1951). The record apparently contains no evidence relative to these issues; not even the tax returns reporting the pertinent figures are presented. Without requested findings or evidence of record we must, as in Issue 7, *supra*, uphold respondent's determination on this issue for failure of petitioners to sustain their burden of proof.

## Issue 11.  Contract Termination Expenses.

Petitioner disputes respondent's disallowance of a 1945 deduction of $29,633.20 for expenses purportedly incurred in connection with contract terminations. Alternatively, it contends that this amount should be allowed in computing the net operating loss carried back from 1946.

---

[8] SEC. 45. ALLOCATION OF INCOME AND DEDUCTIONS.

In any case of two or more organizations, trades, or businesses (whether or not incorporated, whether or not organized in the United States, and whether or not affiliated) owned or controlled directly or indirectly by the same interests, the Commissioner is authorized to distribute, apportion, or allocate gross income, deductions, credits, or allowances, between or among such organizations, trades, or businesses, if he determines that such distribution, apportionment, or allocation is necessary in order to prevent evasion of taxes or clearly to reflect the income of any of such organizations, trades, or businesses.

The evidence concerning these allegations consists solely of two noncommittal answers by the former president of Bolton Delaware.[9] His testimony does not characterize the expenses involved, nor even confirm that they were related to termination of contracts. The witness does not even state unequivocally that the amount deducted on the return was correct.

We find it unnecessary to decide to which year these items properly pertain, since the same burden of proof rests upon petitioner under either alternative. The evidence offered in support of that burden being clearly inadequate, we must decide this issue in accordance with respondent's determination, for failure of any proof on which to base the essential findings.

### Issues 12 and 13. Loss on Coastal Stock and Loans.

The facts on these issues are claimed by petitioner to be as follows.

Seaboard, which owned all of the stock of Coastal (here called Old Coastal), transferred its stock in 1947 to another wholly owned subsidiary, Bolton Delaware, which had in the meantime made loans and advances to Old Coastal. Thereupon Old Coastal merged into Bolton Delaware, and to compound the confusion, Bolton Delaware changed its name to Coastal (here called New Coastal). Petitioner claims that upon the happening of this event, the Old Coastal stock and the advances became worthless and it has taken a deduction in the year of merger for these amounts. The issue is raised by respondent's disallowance.

Petitioner's contention in this respect may best be summarized by its requested finding of fact which, incidentally, we are unable to make:

Bolton, Delaware, claimed as a loss in its income tax return for the year 1947, the sum of $300,000.00 for its investment in the former Coastal Machine Works, Inc. It also claimed as a loss the sum of $191,419.90 for a loss on notes receivable and accounts receivable from former Coastal Machine Works, Inc. When the assets and liabilities of old Coastal were taken over by Bolton, Delaware, the capital stock disappeared and at that time, the book valuation of liabilities exceeded the asset value on the books. The $191,419.90 of notes and accounts receivable which had been owed Bolton Delaware, by the old Coastal were washed out in the merger and were worthless. It was the judgment of the company's accountants and counsel that they were worthless and were deductible for tax purposes, and these amounts were deducted in the income tax return.

---

[9] The entire testimony on this issue is as follows:

Q. Did Bolton also incur certain expenses in connection with contract terminations in the year 1945?

A. Bolton incurred a great deal of expenses.

Q. Is that in the amount claimed as an expense in the year 1945 as evidenced by the return?

A. By the return, yes, that *should be* in the return. [Emphasis added.]

Accepting for the moment petitioner's proposed figures and even assuming that they show that the debts represented by advances to Old Coastal were worthless in 1947, but see *Trinco Industries, Inc.*, 22 T. C. 959, 965, the record is completely barren of any evidence as to whether these obligations may not have been wholly worthless in a prior year. As we said in *Estate of G. A. E. Kohler*, 37 B. T. A. 1019, 1025:

But, if it be assumed that the amount in controversy represented a debt, no more of that debt is deductible in 1931 than the Commissioner has allowed. A taxpayer may not select the year in which to deduct a debt which to his knowledge has been worthless for some time. *Louis D. Beaumont*, 25 B. T. A. 474. If the amounts paid in prior years were a debt, it was worthless long prior to 1931 and should have been charged off and deducted in some other year or years.

For all the evidence we have, these statements apply completely to petitioner's situation. If the debt was worthless in a year prior to 1947, and there is no evidence that it was not, it should have been taken as a deduction in some prior year.

A similar though not identical ground requires disallowance of the deduction for the capital stock transferred by Seaboard to New Coastal. The only ground upon which petitioner contends that this stock had a value in 1947, which can be taken by petitioner as a deduction in that year, is that under section 113 (a) (8) (B) New Coastal acquired the basis of Seaboard, its transferor.[10] This is said to be so because the stock was a "contribution to capital" from Seaboard to New Coastal.

If in fact the stock was wholly worthless prior to 1947 and was wholly worthless when transferred to New Coastal, and there is no showing to the contrary, we think it would be a perversion of the statutory language to consider it as coming within the phrase "contribution to capital," still less as "paid-in surplus." See *Hunter Manufacturing Corporation*, 21 T. C. 424. A contribution of zero would not really be a contribution, nor could a payment of nothing constitute part of a paid-in surplus or, for that matter, of any kind of surplus. Without discussing the other problems obviously raised by petitioner's contention, see, e. g., *Trinco Industries, Inc., supra; National Securities Corporation*, 46 B. T. A. 562, aff'd. (C. A. 3) 137 F. 2d 600, certiorari denied 320 U. S. 794, we conclude that it has not

[10] SEC. 113. ADJUSTED BASIS FOR DETERMINING GAIN OR LOSS.

(a) BASIS (UNADJUSTED) OF PROPERTY.—The basis of property shall be the cost of such property ; except that—

\* \* \* \* \* \* \*

(8) PROPERTY ACQUIRED BY ISSUANCE OF STOCK OR AS PAID-IN SURPLUS.—If the property was acquired after December 31, 1920, by a corporation—

\* \* \* \* \*

(B) as paid-in surplus or as a contribution to capital,

then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

shown that any amount is deductible by New Coastal on account of the worthlessness of the stock; nor that any amount is deductible in 1947 as a worthless debt.

Respondent's disallowance of the claimed loss in 1947 as a carryback to 1945 is accordingly approved.

### Issue 14. Penalty.

Respondent determined against Coastal (Bolton Delaware) a deficiency in addition to tax under section 291 (a) for failure to file a declared value excess-profits tax return. It is impossible to ascertain whether or not this issue has been abandoned. If not, it must still be decided in respondent's favor in view of the complete absence of any evidence on the subject, of any argument in the brief, or even of any request to find relevant facts. There being a complete failure of proof, respondent's determination in this respect is sustained.

*Decisions will be entered under Rule 50.*