ALBERT J. HARVEY, JR., AND MARGARET HARVEY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 76632. Filed October 25, 1960.

*William J. Mantyh, Esq.*, for the petitioner.
*William J. Wise, Esq.*, for the respondent.

### OPINION.

SCOTT, *Judge:* Respondent determined a deficiency in petitioner's income tax for the fiscal year ended July 31, 1955, in the amount of $1,057.87.

The only issue is whether a $14,300 payment made by Albert J. Harvey, Jr., pursuant to an agreement to hold the guarantor of a corporate note harmless, is deductible as an ordinary or capital loss.[1] Petitioner contends that the $14,300 payment is either a business bad debt, a loss incurred in petitioner's trade or business, or a loss from a transaction entered into for profit. Respondent in the notice of deficiency allowed the $14,300 as a nonbusiness bad debt. At the trial and on brief his primary contention is that the $14,300 is a loss from worthlessness of stock.[2]

All of the facts have been stipulated and are found accordingly.

Petitioners, Albert J. Harvey, Jr., and Margaret Harvey, filed a joint Federal income tax return for the fiscal year ended July 31, 1955, with the district director of internal revenue at Milwaukee, Wisconsin.

Albert J. Harvey, Jr. (hereinafter referred to as petitioner), was an employee and a director of H & O Engineering, Inc. (hereinafter referred to as H & O), which was a Wisconsin corporation located at 3747 North Booth Street, Milwaukee, Wisconsin, engaged primarily in the plastics-manufacturing and -molding business. The petitioner, together with his wife and son, in February of 1954, held 3,681.95 shares of common stock of H & O out of a total of 7,767.83 shares issued and outstanding, or 47 per cent of the common stock of H & O.

Vaporized Coatings, Inc., is a Wisconsin corporation engaged in the plastic vacuum metalizing business, and in the year 1954 was also located in the building at 3747 North Booth Street, Milwaukee, Wisconsin, in space it sublet from H & O, its only customer. Petitioner

---

[1] Because of the amount of the long-term capital gains reported by petitioner, it is immaterial whether the loss, if a capital loss, is a long-term capital loss or short-term capital loss.

[2] Neither at the trial nor on brief does petitioner claim surprise or raise any technical objection to this change in respondent's position.

and his wife also owned 1,000 shares of the total of 2,750 shares issued and outstanding of voting stock of Vaporized Coatings, Inc. Petitioner was a director, officer, and manager of Vaporized Coatings, Inc.

Petitioner and his wife owned the building at 3747 North Booth Street, Milwaukee, Wisconsin, which was occupied by H & O, their tenant, and Vaporized Coatings, Inc., a sublessee of H & O, and received $1,250 per month rent from H & O.

In March of 1954, H & O encountered financial difficulties. Petitioner, acting on behalf of all the shareholders of H & O, approached a friend, Ralph Evinrude, with a request that Evinrude guarantee a loan from the Marshall & Ilsley Bank to H & O in the amount of $30,000. Sometime in April of 1954, all the shareholders of H & O, by a written instrument, approved the procuring by H & O of a bank loan not to exceed $30,000 for the business purposes of the corporation and, in consideration of the guaranty of this loan by Evinrude, each shareholder transferred to him one-half of his stock of H & O, both preferred and common. The instrument further provided that Evinrude might, if he so desired, make any or all of the shares so received by him available upon such terms as he might fix to petitioner in consideration for the agreement of petitioner to hold Evinrude harmless from liability on his guaranty.

H & O also secured the bank loan by a chattel mortgage on its equipment.

Petitioner agreed in writing to indemnify Evinrude against any loss by reason of the latter's guaranty of the H & O loan, and to secure this indemnity agreement, petitioner gave to Evinrude a mortgage on the building at 3747 North Booth Street. Simultaneously Evinrude agreed to assign to petitioner the 50 per cent stock interest, both common and preferred, which he had acquired as consideration for giving his guaranty of the H & O bank loan and to purchase and hold a conditional sales contract on certain H & O machinery held by the Giddings & Lewis Machine Tool Company, seller, and to transfer to petitioner any profit on this acquisition. Petitioner, in turn, agreed to additionally indemnify Evinrude against any loss incurred from the purchase of the contract. This they did.

By this transaction petitioner acquired 50 per cent of the issued and outstanding preferred stock of H & O, and an amount of common stock which when added to the common stock he already owned constituted 74 per cent of the issued and outstanding common stock of H & O.

On December 11, 1954, petitioner and his wife sold the building at 3747 North Booth Street for the sum of $108,844.48. Petitioner had purchased the building and land on which it was situated on Decem-

ber 15, 1952, at a total cost of $75,146.50. In place of the real estate mortgage he had given to Evinrude to secure his indemnity agreement, petitioner placed marketable securities valued at $40,000 in escrow with Evinrude's attorney.

In January of 1955, both H & O and Vaporized Coatings, Inc., were placed for sale with a business opportunity broker in Chicago, Illinois.

In February of 1955, H & O filed a voluntary petition for bankruptcy in the Federal District Court for the Eastern District of Wisconsin. In June of 1955 the assets of H & O were sold in the bankruptcy proceedings with the consent of the security holders, namely, the Marshall & Ilsley Bank, holder of the chattel mortgage, and Evinrude, holder of the conditional sales contract. The sale of the machinery, which was subject to the chattel mortgage, produced sufficient funds to pay all but $15,550 of the bank loan. The sale of the machinery subject to the conditional sales contract brought $6,250, giving a profit of $1,250 to Evinrude over the purchase price of the contract. The bank called upon Evinrude to make good his guaranty for $15,550. Evinrude, in turn, called upon the petitioner to satisfy his indemnity agreement. Petitioner authorized Evinrude's attorney to sell securities held by the attorney, as escrow agent, and to pay the sum of $14,300 to the bank. In addition, Evinrude delivered the profit of $1,250, received by him on the conditional sales contract, to petitioner. The latter paid this to Evinrude's attorney and directed it to be paid to the bank as the balance due under the indemnity agreement.

Petitioner first contends that he is entitled to deduct the $14,300 paid under his agreement to indemnify Evinrude's guaranty of the H & O loan as a business bad debt under section 166(a)(1) of the 1954 Code [3] or a loss incurred in a trade or business under section 165(a) and (c)(1) [4] since he was in the business of renting the building of which H & O was the tenant. Petitioner argues that his loss arose because of an effort on his part to financially assist his lessee, H & O, thereby enabling that corporation to remain as his tenant, thus guaranteeing his continued receipt of the $1,250-a-month rental from H & O. Petitioner also felt that the presence of a tenant in his building would enhance the value thereof.

---

[3] SEC. 166. BAD DEBTS.
 (a) GENERAL RULE.—
 (1) WHOLLY WORTHLESS DEBTS.—There shall be allowed as a deduction any debt which becomes worthless within the taxable year.
[4] SEC. 165. LOSSES.
 (a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.
 * * * * * * *
 (c) LIMITATION ON LOSSES OF INDIVIDUALS.—In the case of an individual, the deduction under subsection (a) shall be limited to—
 (1) losses incurred in a trade or business;

Petitioner in the alternative contends that the loss resulted from a transaction entered into for profit though not connected with his trade or business within the meaning of section 165 (c) (2) of the 1954 Code.[5] Petitioner points out the numerous advantages that would have resulted for him had H & O been able to overcome its financial difficulties with the money received from the loan. Petitioner states that he would have been assured of H & O's continued tenancy in his building at a $1,250-per-month rental, he would have profited from his increased stockholdings in H & O, and his stock in Vaporized Coatings, Inc., would have been more valuable by reason of the fact that its only customer, H & O, would have continued in business. Also petitioner states that as part of the arrangement with Evinrude he stood to and did make a profit upon the acquisition of the conditional sales contract.

Respondent's primary contention is that the transaction whereby petitioner indemnified Evinrude on his guaranty of the H & O loan was in substance an acquisition of H & O stock by petitioner for a contingent liability. Viewed in this light, respondent argues, the basis of petitioner's stock is $14,300, which amount constituted a long-term capital loss in the fiscal year 1955 when the H & O stock became worthless.[6]

In the alternative respondent maintains that the loss arose through the fulfillment of a guaranty of a corporate debt by a stockholder and should be considered as a nonbusiness bad debt,[7] citing *Putnam v. Commissioner*, 352 U.S. 82, affirming 224 F. 2d 947, affirming a Memorandum Opinion of this Court.

Each party cites cases supporting his primary and alternative contentions, none of which involves precisely the factual situation present in the instant case. Petitioner relies for his primary contention on a number of cases, each of which involves a taxpayer's loans to or purchase of stock in an enterprise which was a supplier

---

[5] SEC. 165(c). (2) losses incurred in any transaction entered into for profit, though not connected with a trade or business ; * * *

[6] I.R.C. 1954 :
SEC. 165(g). WORTHLESS SECURITIES.—
(1) GENERAL RULE.—If any security which is a capital asset becomes worthless during the taxable year, the loss resulting therefrom shall, for purposes of this subtitle, be treated as a loss from the sale or exchange, on the last day of the taxable year, of a capital asset.

[7] I.R.C. 1954 :
SEC. 166(d). NONBUSINESS DEBTS.—
(1) GENERAL RULE.—In the case of a taxpayer other than a corporation—
(A) subsections (a) and (c) shall not apply to any nonbusiness debt ; and
(B) where any nonbusiness debt becomes worthless within the taxable year, the loss resulting therefrom shall be considered a loss from the sale or exchange, during the taxable year, of a capital asset held for not more than 6 months.
(2) NONBUSINESS DEBT DEFINED.—For purposes of paragraph (1), the term "nonbusiness debt" means a debt other than—
(A) a debt created or acquired (as the case may be) in connection with a trade or business of the taxpayer ; or
(B) a debt the loss from the worthlessness of which is incurred in the taxpayer's trade or business.

of the necessary raw materials in his trade or business. The relationship of the loan or the stock purchase in each of these cases to the taxpayer's trade or business was such that the controlling motive of the loan or purchase was considered sufficiently connected with the taxpayer's business to cause the resultant losses to be treated as business bad debts or ordinary and necessary expenses of the taxpayer's trade or business.

The record herein contains no evidence tending to show that petitioner's building was usable only by H & O or that another tenant for the building was not readily available at the same or greater rental than that paid by H & O. Absent such evidence, there is no showing of a sufficiently proximate relationship between petitioner's rental activities and the indemnity agreement to the guarantor of the H & O loan to bring this case within the holdings of the cases cited by petitioner.

The cases cited by petitioner in support of his alternative position involve payments made pursuant to guaranties by the taxpayer. None of these cases involves the situation where the taxpayer, in return for his guaranty, received stock and thus all are distinguishable on the facts involved from the instant case.

Respondent in support of both his contentions cites a number of cases in which transactions involving advances or guaranties by a taxpayer, either where stock was acquired in the same transaction or where the taxpayer was already a stockholder in the corporation to which the advance or for which the guaranty was made, were considered essentially capital in nature and the resulting losses either capital losses or nonbusiness bad debts.

The question here involved is basically factual. It is clear from the stipulated facts [8] that Evinrude stood neither to gain nor lose from the transaction and was nothing more than a strawman. The net effect of the entire transaction, disregarding the conditional sales contract, was that petitioner, being a substantial shareholder and director of H & O, was able to obtain additional funds for H & O by pledging his property and in return he received stock of H & O. In substance, this transaction constitutes an acquisition of H & O stock by petitioner for his guaranty of the H & O loan. Cf. *First Nat. Bank & Trust Co.* v. *United States*, 115 F. 2d 194 (C.A. 5, 1940), and *Frank H. Gable*, 34 T.C. 228 (1960).

Neither party contends that the portion of the transaction relating to the conditional sales contract should be treated separately from the agreement by petitioner to indemnify Evinrude on his guaranty

---

[8] Petitioner in his brief has requested the Court to take judicial notice of certain facts stated to be in the file of the bankruptcy proceedings in the Federal District Court for the Eastern District of Wisconsin. Respondent objects to petitioner's request. The facts set forth by petitioner as being a part of the files in the bankruptcy proceedings were not offered at the trial of this case and are not properly a part of the record herein. However, were these facts accepted as stated by petitioner, our conclusion would not be changed.

of the H & O loan. The two were in fact part of one transaction and the parties are agreed that the gain upon the conditional sales contract should be used to offset the loss upon petitioner's promise to indemnify. We have, therefore, treated the two transactions together, and hold that the substance of the entire transaction was an exchange of petitioner's agreement to indemnify for stock of H & O.

Petitioner, by his indemnity agreement, assumed a contingent liability and thus acquired the H & O stock without making any immediate payment therefor. Respondent contends that the basis of the stock is $14,300, the net amount which petitioner was required to pay in complete satisfaction of his indemnity obligation, citing *D. Bruce Forrester*, 4 T.C. 907 (1945). Petitioner makes no contention as to the basis of the stock arguing only that the $14,300 loss here involved is not capital in nature. No evidence has been presented to support any basis for the stock acquired by petitioner for his indemnity agreement other than the amount of $14,300, which he was ultimately required to pay. Respondent concedes that petitioner's H & O stock became worthless in the fiscal year ended July 31, 1955.

We, therefore, hold that petitioner in his fiscal year ended July 31, 1955, sustained a capital loss of $14,300 from worthlessness of the H & O stock acquired by him in return for his indemnity agreement.

*Decision will be entered for the respondent.*