T.C. Memo. 1998-355

UNITED STATES TAX COURT

TIMOTHY E. BUTLER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13509-97.                    Filed October 5, 1998.

Timothy E. Butler, pro se.

<u>Michael O'Donnell</u> and <u>George W. Bezold</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to
the provisions of section 7443A(b)(3) and Rules 180, 181, and
182.[1]

_____

    [1] Unless otherwise indicated, all section references are to
the Internal Revenue Code in effect for 1993 and 1994, the
taxable years in issue, and all Rule references are to the Tax
Court Rules of Practice and Procedure.

Respondent determined deficiencies in petitioner's Federal income taxes for the taxable years 1993 and 1994 in the amounts of $4,084 and $2,561, respectively. Respondent also determined accuracy-related penalties under section 6662(a) for negligence or intentional disregard of rules or regulations for the same taxable years in the amounts of $816.80 and $512.20, respectively.

After concessions by the parties,[2] the issues for decision are as follows:

(1) Whether petitioner is entitled to dependency exemptions for three individuals in 1993 and one individual in 1994. We hold that he is not.

(2) Whether petitioner qualifies for head-of-household filing status in 1993 and 1994. We hold that he does not.

---

[2] Petitioner concedes that he received unreported rental income in the amounts of $5,400 in 1993 and $2,025 in 1994; that he received State income tax refunds in the amounts of $224 in 1993 and $414 in 1994; and that he paid mortgage interest and real estate taxes in the respective amounts of $2,920 and $1,963 in 1994.

Respondent concedes that petitioner's State income tax refund received in 1994 is not taxable if petitioner did not receive a tax benefit in respect of such tax (i.e., if petitioner's itemized deductions for 1993 do not exceed the standard deduction for 1993); that petitioner's mortgage interest and real estate taxes should be allocated equally between Schedule A and Schedule E in 1994; and that petitioner is entitled to Schedule E deductions in 1994 for cleaning and maintenance in the amount of $600 and repairs in the amount of $1,350.

(3) Whether petitioner is entitled to itemized deductions for charitable contributions in 1993 and 1994.  We hold that he is not.

(4) Whether petitioner is entitled to an itemized deduction for gambling losses in 1993.  We hold that he is not.

(5) Whether petitioner is entitled to an itemized deduction for union dues in 1993.  We hold that he is not.

(6) Whether petitioner must include in gross income refunds of State income taxes he received in 1993 and 1994.  We hold that he must include the refund received in 1993 but not the refund received in 1994.

(7) Whether petitioner is entitled to Schedule E deductions in 1994 for cleaning and maintenance and for repairs in excess of the amounts conceded by respondent.  We hold that he is not.

(8) Whether petitioner is entitled to a Schedule E deduction for utilities in 1994.  We hold that he is to the extent provided herein.

(9) Whether petitioner is liable for the accuracy-related penalty under section 6662(a) for negligence or intentional disregard of rules or regulations in 1993 and 1994.  We hold that he is to the extent provided herein.

FINDINGS OF FACT

Some of the facts have been stipulated, and they are so found. Petitioner resided in Milwaukee, Wisconsin, at the time that his petition was filed with the Court.

During the years in issue, petitioner was employed as a local bus driver by Milwaukee Transport Services, Inc. and received wages in the amount of $34,697 in 1993 and $35,043 in 1994. As a bus driver, petitioner was a member of Local 998 of the Amalgamated Transit Union (AFL-CIO) and paid union dues in the amounts of $331.65 in 1993 and $360.57 in 1994.

During the years in issue, petitioner owned a duplex house located at 2402 North 40th Street in Milwaukee (the Duplex). Petitioner used part of the Duplex as his personal residence and rented the other part to a third party.

Petitioner was not married during the years in issue. However, during part of 1993 he lived with a woman by the name of Marie and her three children: Lynn, who was 12; Bob, who was 11; and Robin, who was 10. Petitioner is neither the adoptive father nor the foster father of any of these children.

During the latter part of 1993, "some turmoil" developed between petitioner and Marie. As a consequence, Marie permanently left the household with her three children.

At or about the time of the "turmoil" with Marie, petitioner became involved with another woman by the name of Alisha. Petitioner lived with Alisha and her son James, who was 5 in

- 5 -

1994, through the end of the calendar year 1994. Petitioner is neither the adoptive father nor the foster father of James.

Petitioner filed an income tax return (Form 1040) for 1993. On his return for that year, petitioner claimed head-of-household filing status and also claimed a total of three dependency exemptions, one each for Lynn and Robin, whom petitioner identified as his daughters, and one for Bob, whom petitioner identified as his son. Petitioner reported adjusted gross income (AGI) in the amount of $34,697; i.e., the amount of his wages from working as a bus driver.

Petitioner attached Schedule A (Itemized Deductions) to his 1993 return and claimed the following deductions:

| | | |
|---|---|---|
| State/local income taxes | | $2,043 |
| Charitable contributions: | | |
| contributions by cash or check | $3,000 | |
| other than by cash or check | 400 | 3,400 |
| Union dues | | 360 |
| Gambling loss | | 5,000 |

Petitioner did not report any gambling income on his 1993 return.

Petitioner received a refund of State income tax in the amount of $224 in 1993. Petitioner did not report the receipt of this refund on his 1993 return.

Petitioner failed to report rental income in the amount of $5,400 on his 1993 return.

Petitioner also filed a Form 1040 for 1994. On his return for that year, petitioner claimed head-of-household filing status

and also claimed a dependency exemption for James, whom petitioner identified as his infant son.  Petitioner attached Schedule A to his return.  Included among the deductions claimed on Schedule A were the following:

| | | |
|---|---|---|
| Real estate taxes | | $1,963 |
| Home mortgage interest | | 2,920 |
| Charitable contributions: | | |
| contributions by cash or check | $200 | |
| other than by cash or check | 400 | 600 |

Petitioner also attached Schedule E (Supplemental Income and Loss) to his 1994 return and reported rents received (in the amount of $3,375) and expenses with respect to the Duplex. Petitioner underreported rents received by $2,025.  Among the deductions claimed on Schedule E were the following:

| | |
|---|---|
| Cleaning & maintenance | $1,090 |
| Mortgage interest | 1,460 |
| Repairs | 2,300 |
| Taxes | 981 |
| Utilities | 800 |

Petitioner duplicated deductions for (home) mortgage interest and (real estate) taxes claimed on his Schedule A and Schedule E for 1994.  In this regard, during 1994 petitioner paid mortgage interest in the total amount of $2,920 and real estate taxes in the total amount of $1,963.  Petitioner deducted each of those amounts in its entirety as an itemized deduction on Schedule A and one-half of each of those amounts as a rental expense on Schedule E.

Petitioner received a refund of State income tax in the amount of $414 in 1994. Petitioner did not report the receipt of this refund on his 1994 income tax return.

Petitioner relied upon a commercial service to prepare his income tax returns for 1993 and 1994.

In the notice of deficiency, respondent determined, inter alia: (1) Petitioner is not entitled to any dependency exemptions for 1993 and 1994; (2) petitioner is entitled to "single" filing status, rather than head-of-household filing status, in 1993 and 1994; (3) petitioner failed to substantiate the payment of any (a) charitable contributions in 1993 and 1994 and (b) union dues in 1993; (4) petitioner is not entitled to deduct any gambling losses in 1993; (5) petitioner failed to substantiate the payment of any claimed rental expenses in 1994 for cleaning and maintenance, repairs, and utilities; (6) petitioner duplicated deductions in 1994 for mortgage interest and real estate taxes on his Schedules A and E; (7) petitioner failed to report the refund of State income taxes in 1993 and 1994; and (8) petitioner is liable for the accuracy-related penalty under section 6662(a) for negligence or intentional disregard of rules or regulations.

## OPINION

Generally, the Commissioner's determinations are presumed correct, and the taxpayer bears the burden of proving that those determinations are erroneous. Rule 142(a); INDOPCO, Inc. v.

<u>Commissioner</u>, 503 U.S. 79, 84 (1992); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

<u>Issue (1): Dependency Exemptions - 1993 and 1994</u>

A taxpayer is allowed as a deduction an exemption for each dependent. Sec. 151(c)(1). A dependent is defined as an individual over half of whose total support is received from the taxpayer. Sec. 152(a). In order to qualify as a dependent, an individual must also be related to either the taxpayer in one of the ways enumerated in section 152(a)(1) through (8) or a member of the taxpayer's household within the meaning of section 152(a)(9).

A son or daughter, or a stepson or a stepdaughter, of a taxpayer may qualify as a dependent. Sec. 152(a)(1) and (2). A child legally adopted by a taxpayer is treated as the taxpayer's child. Sec. 152(b)(2). A foster child is also treated as the taxpayer's child if such child is a member of the taxpayer's household within the meaning of section 152(a)(9). <u>Id.</u>

Petitioner claimed dependency exemptions for Lynn, Bob, and Robin in 1993 and for James in 1994. Although petitioner identified these individuals on his returns as his children, he is not related to them by blood or marriage, nor is he their adoptive or foster father. Accordingly, petitioner must establish, inter alia, that these individuals were members of petitioner's household within the meaning of section 152(a)(9).

Section 1.152-1(b), Income Tax Regs., provides that section 152(a)(9) applies to an individual who lived with the taxpayer and was a member of the taxpayer's household during the entire taxable year of the taxpayer.  Because Lynn, Bob, and Robin did not live with petitioner and were not members of petitioner's household during the entire calendar year 1993, they do not qualify as petitioner's dependents for that year.  Accordingly, we sustain respondent's determination on this matter.

James may have lived with petitioner and may have been a member of petitioner's household during the entire calendar year 1994.  Assuming arguendo that such was the case, James still does not qualify as petitioner's dependent because petitioner failed to establish that he provided more than half of James' support.

In applying the support test, we evaluate the amount of support furnished by the taxpayer as compared to the total amount of support received by the claimed dependent from all sources. Turecamo v. Commissioner, 554 F.2d 564, 569 (2d Cir. 1977), affg. 64 T.C. 720 (1975); sec. 1.152-1(a)(2)(i), Income Tax Regs.  In other words, in order to establish that the taxpayer provided more than half of the claimed dependent's support, the taxpayer must first show, by competent evidence, the total amount of support received by the claimed dependent from all sources during the year in issue.  Otherwise, the taxpayer cannot be said to have established that he or she provided more than half of the support for the claimed dependent.  E.g., Blanco v. Commissioner,

56 T.C. 512, 514-515 (1971); Seraydar v. Commissioner, 50 T.C. 756, 760 (1968); Stafford v. Commissioner, 46 T.C. 515, 518 (1966).

At trial, petitioner offered nothing other than unsupported and conclusory statements that he supported James. Such proof, which adds nothing to the claim made by petitioner on his 1994 return, is insufficient to carry petitioner's burden. Cf. Seaboard Commercial Corp. v. Commissioner, 28 T.C. 1034, 1051 (1957) (a taxpayer's income tax return is a self-serving declaration that may not be accepted as proof for the deduction or exclusion claimed by the taxpayer); Halle v. Commissioner, 7 T.C. 245 (1946) (same), affd. 175 F.2d 500 (2d Cir. 1949). Accordingly, we sustain respondent's determination on this matter.

### Issue (2): Filing Status - 1993 and 1994

In order to qualify for head-of-household filing status, petitioner must satisfy the requirements of section 2(b). Pursuant to that section, and as relevant herein, an individual qualifies as a head of household if the individual is not married at the close of the taxable year and maintains as his home a household that constitutes for more than one-half of the taxable year, the principal place of abode of an individual who qualifies as the taxpayer's dependent within the meaning of section 151. Sec. 2(b)(1)(A)(ii). However, a taxpayer is not considered to be a head of household by reason of an individual who would not be a

dependent for the taxable year but for section 152(a)(9).  Sec. 2(b)(3)(B)(i).

We have previously held that petitioner is not entitled to dependency exemptions for Lynn, Bob, and Robin in 1993 and for James in 1994.  Accordingly, petitioner does not qualify as a head of household.  However, even if we had held that petitioner is entitled to dependency exemptions under section 152(a)(9), petitioner would still not qualify, as a matter of law, as a head of household because of the limitation set forth in section 2(b)(3)(B)(i).  Accordingly, we sustain respondent's determination that petitioner is not entitled to head of household filing status but rather "single" filing status.

Issue (3): Charitable Contributions - 1993 and 1994

Charitable contributions are deductible under section 170 only if verified under regulations prescribed by the Secretary. Sec. 170(a)(1).  Under the applicable regulations, contributions of money are required to be substantiated by one of the following: (1) A canceled check; (2) a receipt from the donee charitable organization showing the name of the donee, the date, and amount of the contribution; or (3) in the absence of a canceled check or receipt, other reliable written records showing the name of the donee, the date, and amount of the contribution. Sec. 1.170A-13(a)(1), Income Tax Regs.; see Thorpe v. Commissioner, T.C. Memo. 1998-123.  Contributions of property other than money are required to be substantiated by a receipt

from the donee charitable organization showing the name and address of the donee, the date and location of the contribution, and a description of the property in detail reasonably sufficient under the circumstances. Sec. 1.170A-13(b)(1), Income Tax Regs.; see Thorpe v. Commissioner, supra. Where it is impractical to obtain a receipt, taxpayers must maintain reliable written records of their donations. Sec. 1.170A-13(b)(1); see Daniel v. Commissioner, T.C. Memo. 1997-328.

At trial, petitioner alleged that he made donations to the Unification Church in Mequon, Wisconsin. According to petitioner, he would deliver a check to the church to be held "as collateral" for a few days until he came back with cash, at which time the church would return his check uncashed as a receipt. The following testimony by petitioner portrays the alleged arrangement:

> I gave it [my check] to the individuals [the clergy] to hold for me, because they didn't have a check -- a receipt program of their own. So with my good faith, I said, Hold the check. I'm going to bring you the money in just a couple days to help you. Then you can stamp the check paid that I gave you the money, and I'll take my check. It will act as our receipt. And that's the way we did our business like that.

In response to the question why the church did not cash the check and thereby let the canceled check serve as a receipt, petitioner testified: "Because I had other plans for my funds in the bank and I wanted to bring them the cash." Petitioner testified

further that he obtained cash from people that either owed him money or would lend him money.  Thus:

> Q:  Where did you get the money, the cash money, that you gave to these preachers and other individuals? Where would that come from?
>
> A:  Well, it would come from a number of sources. * * * People that owe me money, different people * * *. You know, I have a number of friends that own tractor-trailers.  I have a number of friends that would tell me, or I'll lend you the money, because it's something I really wanted.
>
> Q:  They would lend you the money to give to a charity?
>
> A:  Yes.  Because if I -- because I had other plans for my money in the bank.
>
> Q:  Even though you had sufficient amounts in your checking account to cover the check?
>
> A:  * * * I had a sufficient amount -- in the checking account.
>
> Q:  But you go and borrow the money, rather than have them cash the check?
>
> A:  Right.  Because there are other things I want to do with it.

We are unable to accept petitioner's testimony at face value.  See Tokarski v. Commissioner, 87 T.C. 74, 77 (1986) (the Court is not required to accept a taxpayer's testimony as gospel).  Regardless, petitioner's testimony, which was uncorroborated, does not satisfy the substantiation requirements of section 170(a)(1) and section 1.170A-13(a)(1) and (b)(1), Income Tax Regs.  Under other circumstances, we might be inclined to estimate the amount of contributions made by a taxpayer.  See

- 14 -

Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930). In order to do so, however, we must have some basis in fact upon which an estimate can be made, Vanicek v. Commissioner, 85 T.C. 731, 743 (1985); otherwise, any allowance would amount to unguided largesse, Williams v. United States, 245 F.2d 559, 560 (5th Cir. 1957). Here, however, we have no basis whatsoever on which to make a reasonable estimate. Accordingly, we sustain respondent's determination on this issue.

Issue (4): Gambling Loss - 1993

Petitioner claimed a deduction for a gambling loss in the amount of $5,000 on his Schedule A for 1993.

Petitioner contends that he lost money gambling in 1993 and is therefore entitled to deduct his loss. Respondent contends, inter alia, that because petitioner did not report any gambling winnings in 1993, petitioner is not entitled to deduct any gambling loss for that year. We agree with respondent.

Section 165(d) provides for a deduction for losses from gambling transactions but only to the extent of gains from such transactions. Sec. 165(d); sec 1.165-10, Income Tax Regs. In other words, a taxpayer is not entitled, as a matter of law, to deduct a net gambling loss. Therefore, because petitioner did not report any gambling winnings on his income tax return for 1993, he is not entitled to any deduction for a gambling loss in that year.

Issue (5): Union Dues - 1993

Petitioner claimed a deduction for union dues in the amount of $360 on his Schedule A for 1993.

Documentary evidence introduced by petitioner at trial establishes that petitioner paid union dues to Local 998 of the Amalgamated Transit Union (AFL-CIO) in the amount of $331.65 in 1993. Petitioner contends that his exhibit contains a typographical error and that the amount actually paid was the amount claimed on his return. However, the matter is moot because of the 2-percent floor on miscellaneous itemized deductions prescribed by section 67.

Section 67(a) provides that in the case of an individual, miscellaneous itemized deductions are allowable only to the extent that the aggregate of such deductions exceeds 2 percent of the individual's AGI. A deduction for union dues constitutes a miscellaneous itemized deduction. Sec. 67(b). In petitioner's case, the deduction for union dues is petitioner's only miscellaneous itemized deduction in 1993, and 2 percent of petitioner's AGI for that year exceeds the amount that petitioner seeks to deduct. Accordingly, no deduction is allowable.

- 16 -

Issue (6): State Income Tax Refunds

Petitioner received refunds of State income taxes in the amount of $224 in 1993 and in the amount of $414 in 1994, neither of which was reported in income.

Generally, pursuant to section 111 and the regulations thereunder, if State income tax was deducted on a Federal income tax return for a prior taxable year and if such deduction resulted in a tax benefit to the taxpayer (i.e., a reduction of Federal income tax) for such prior taxable year, then a subsequent recovery by the taxpayer (i.e., a refund) of such State income tax must be included in the taxpayer's gross income for Federal tax purposes in the year in which the recovery is received.  Kadunc v. Commissioner, T.C. Memo. 1997-92, and cases cited therein.

Petitioner presented no evidence to show that he did not realize a tax benefit from the deduction of State income tax on his Federal income tax return for 1992.  Accordingly, we sustain respondent's determination that the refund of State income tax in the amount of $224 in 1993 is includable in petitioner's gross income for that year.

In contrast, the record demonstrates that petitioner will not receive a tax benefit from the deduction of State income tax on his Federal income tax return for 1993 because the standard deduction to which he is entitled for 1993 exceeds the amount of

itemized deductions that are allowable for that year.[3]
Accordingly, the refund of State income tax in the amount of $414
in 1994 is not includable in petitioner's gross income for that
year.[4]

### Issues (7) and (8): Schedule E Deductions - 1994

Respondent disallowed entirely Schedule E deductions claimed
by petitioner in 1994 for cleaning and maintenance, repairs, and
utilities.  At trial, respondent conceded that petitioner had
substantiated, and was therefore entitled to deduct, expenses for
cleaning and maintenance in the amount of $600 and repairs in the
amount of $1,350.  The balance of such deductions, and the entire
deduction claimed for utilities, remain in issue.

At trial, petitioner introduced no persuasive evidence that
he is entitled to deductions for cleaning and maintenance and for
repairs in excess of the amounts conceded by respondent.
Accordingly, we sustain respondent's determination as modified by
respondent's concession at trial.

Insofar as the deduction for utilities is concerned, the
record does not permit a finding that petitioner expended the
amount claimed on his return (i.e., $800).  However, we are
satisfied that petitioner did, in fact, incur expenses for

---

[3]  For 1993, an individual with a "single" filing status is
entitled to a standard deduction in the amount of $3,700.  Sec.
63(c).  This amount exceeds petitioner's allowable itemized
deductions (i.e., State income tax in the amount of $2,043).

[4]  See _supra_ note 2.

utilities in respect of the rental portion of the Duplex. Accordingly, applying the rationale of Cohan v. Commissioner, 39 F.2d at 544, and using our best judgment in the absence of documentary evidence, we conclude that petitioner is entitled to a deduction for utilities in the amount of $600.

Issue (9): Accuracy-related Penalty

Section 6662(a) and (b)(1) provides that if any portion of an underpayment of tax is attributable to negligence or disregard of rules or regulations, then there shall be added to the tax an amount equal to 20 percent of the amount of the underpayment that is so attributable. The term "negligence" includes any failure to make a reasonable attempt to comply with the statute, and the term "disregard" includes any careless, reckless, or intentional disregard. Sec. 6662(c).

By virtue of section 6664(c)(1), the accuracy-related penalty is not imposed with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion. Whether a taxpayer acted in good faith depends upon the pertinent facts and circumstances. Estate of Monroe v. Commissioner, 104 T.C. 352, 366 (1995), revd. in part on another ground and remanded 124 F.3d 699 (5th Cir. 1977); sec. 1.6664-4(b)(1), Income Tax Regs. The most important factor is the extent of the taxpayer's effort to assess his or her proper

tax liability. <u>Beard v. Commissioner</u>, T.C. Memo. 1995-41; sec. 1.6664-4(b)(1), Income Tax Regs.

The record in this case amply demonstrates negligence in the preparation of petitioner's 1993 and 1994 income tax returns. For example, petitioner failed to report any rental income in 1993, and he underreported a significant percentage of rental income in 1994. However, the fact remains that petitioner's 1993 and 1994 income tax returns were prepared by a commercial service. We therefore, analyze whether this fact relieves petitioner from liability, in whole or in part, for any penalty.

As a general rule, the duty of filing accurate tax returns cannot be avoided by placing responsibility on an agent. <u>Metra Chem Corp. v. Commissioner</u>, 88 T.C. 654, 662 (1987); <u>Pritchett v. Commissioner</u>, 63 T.C. 149, 174 (1974). However, a taxpayer may avoid the accuracy-related penalty by showing that his reliance on the advice of a professional, such as a commercial return preparer, was reasonable and in good faith. Sec. 1.6664-4(b)(1), Income Tax Regs. Specifically, the taxpayer must establish that complete and correct information was provided to the return preparer and that the item incorrectly claimed or reported on the return was the result of the preparer's error. See <u>Ma-Tran Corp. v. Commissioner</u>, 70 T.C. 158, 173 (1978). A taxpayer's reliance on the advice of a preparer is not reasonable or in good faith where a cursory review of the taxpayer's return would reveal an omission from income. <u>Metra Chem Corp. v. Commissioner</u>, <u>supra</u>.

Although petitioner relied on a commercial service to prepare his 1993 and 1994 income tax returns, the record does not establish that petitioner provided complete and correct information to the preparer. There is no basis, therefore, to completely absolve petitioner from liability for the accuracy-related penalty. However, we think that petitioner should not be liable for the accuracy-related penalty insofar as the underpayment of tax for 1993 is attributable to the disallowed deduction for the gambling loss.

A return preparer should know that, as a matter of law, losses from wagering transactions are allowable only to the extent of the gains from such transactions. Sec. 165(d). Petitioner was not aware of this provision, and in view of the particular facts and circumstances of this case, we do not think that petitioner could be expected to have been aware of such provision. Therefore, even though the record does not establish that petitioner provided complete and correct information to his return preparer, the deduction claimed for the $5,000 net gambling loss was the result of the preparer's error. Accordingly, to this extent, respondent's determination is not sustained.

Conclusion

　　To reflect our disposition of the disputed issues, as well as the parties' concessions,[5]

Decision will be entered

under Rule 155.

---

[5] In giving effect to petitioner's concession of unreported rental income in 1993, see supra note 2, the parties are directed to allow as an offset for allocable expenses the amount of $2,625. Cohan v. Commissioner, 39 F.2d 540, 544 (2d Cir. 1930).